## MATTER OF TAN

### In Deportation Proceedings

#### A-13983727

*Decided by Board September 15, 1967 and December 14, 1967*

(1) Since it has not been established that the government in power can not control mob action in Indonesia, application by respondent, a native and citizen of Indonesia, for withholding of his deportation to that country under section 243(h), Immigration and Nationality Act, as amended, on the claim that because he is of Chinese ethnic origin he would be subject to persecution as a result of mob action directed against members of his race by individual groups in Indonesia, is denied in the absence of convincing evidence he would be singled out for persecution.

(2) The burden of proof and standards for withholding deportation under section 243(h) of the Act, as amended, may not be equated with the burden of proof required to establish eligibility for "refugee" status under section 203 (a)(7) of the Act, as amended.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer.

ON BEHALF OF RESPONDENT:
David Carliner, Esquire
Warner Building
Washington, D.C. 20004

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

### BEFORE THE BOARD

The respondent, of Chinese ethnic origin, is a native and citizen of Indonesia. An order entered by the special inquiry officer on May 31, 1966 grants the respondent voluntary departure in lieu of deportation as an alien who after entry as a nonimmigrant exchange visitor has remained longer than permitted. An application for a stay of deportation to Indonesia was denied and the respondent's appeal from this denial was considered by the Board of Immigration Appeals in November of 1966. We remanded the case for a reopening of the proceeding to permit the introduction of evidence material to the issue of relief under section 243(h) and for such other evidence as the respondent may wish

564

to present on this issue. We directed that the special inquiry officer render a decision *de novo* on the basis of the entire record. A reopened hearing was accorded the respondent on January 25, 1967 and after due consideration of the entire record the special inquiry officer denied the respondent's application to withhold deportation to Indonesia pursuant for the provisions of section 243 (h) of the Act. He certified the case to the Board of Immigration Appeals for final decision.

The record in addition to the respondent's testimony both at the original and reopened hearings includes six articles published in the Washington Post, Time Magazine, The New York Times Magazine, by the United States Department of Health, Education and Welfare and by Cornell University (Exs. 4 through 9). The respondent also submitted excerpts from a letter from his brother-in-law in East Java dated June 6, 1966 (Ex. 10). A recital of the substance of the aforementioned published articles has been fully set forth in the opinion of the special inquiry officer and will not be repeated.

The published articles indicate that many of the 2,500,000 Chinese in Indonesia fear a blood bath; that there is regular looting of Chinese properties; that the Indonesian Government has banned the publication of all Chinese language newspapers; that many of the Chinese language schools have been closed; that many Chinese have been deported to Communist China; that native Indonesians resent the domination of the nation's commerce by the Chinese; that there is an apparent organized attempt by the Indonesian Government to create hostility toward the Chinese; that the Chinese control 80 per cent of private industry and that the anti-Chinese sentiment is directed with equal force against Indonesian citizens who are ethnic Chinese and Chinese who have migrated from the mainland.

Excerpts from the letter entered as Exhibit 10 advised the respondent that his family "are doing fine"; that after the first of October movement "the situation was indeed very quiet and the atmosphere unpleasant"; that on April 10 there was mob violence along Doho Street which resulted in broken front windows in his father's bakery and that fortunately the bakery was not entered due to the intervention of "military men and police."

The respondent testified that the Indonesian police make no distinction between the Chinese born in China and the Chinese born in Indonesia as far as police protection is concerned (R-27). He further testified that he had heard complaints from Chinese groups of how they were mistreated but that he had never actually experienced any mistreatment himself (R-28). The respondent when questioned as to whether he would be persecuted by the Indonesian Government if he returned to Indonesia replied in the negative (R-32). He admitted

that the persecution of the Chinese is by factions or individuals or groups who have no authorized connection with the government (R–32). He also stated that the police do nothing to restrain mob violence when that violence is directed against the Chinese (R–32).

The special inquiry officer concludes that the respondent has not met the burden of establishing that he would be subject to persecution if he returned to Indonesia by reason of the fact that he is a member of the Chinese race. The special inquiry officer relies on the respondent's testimony that he experienced no personal persecution before his departure in 1962; that the respondent was employed by the Indonesian Government before he departed; that he left his country with the blessing of his government as an exchange visitor; that in effect the Chinese attitude has its origin by reason of the fact that the Chinese control the country economically and that while the Chinese as an ethnic group may continue to draw the animosity or ill will of some of the Indonesian people any persecution of the Chinese has not been by government action although there is some evidence that government authorities have acquiesced or sanctioned the agitation against the Chinese.

When the case was originally before us in November of 1966 counsel argued that section 243(h) of the Immigration and Nationality Act has no requirement that an alien prove to a mathematical certainty that acts of violence would be directed against him if he returns to the country to which he has been ordered deported. Counsel also maintains that section 243(h) has no provision which requires the Attorney General to make a finding that the government of a country subjects an alien deportee to persecution in order to be eligible for relief under section 243(h) of the Act.

The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his *opinion* the alien would be subject to persecution on account of race, religion or political opinion. A deportable alien is eligible for relief only when in the "opinion" of the Attorney General his deportation would subject the alien to persecution in the country to which he has been ordered deported. The statute does not restrict or specify the considerations that may be relied upon by the Attorney General in formulating an "opinion."

The evidence supporting the respondent's claim of persecution establishes with certainty that the Chinese as a race have incurred the animosity of individual groups of native Indonesians primarily because of their ability to control the economic and material wealth of Indonesia. There is also evidence that Chinese who are on the same social economic level as the indigenous Indonesians are in many in-

stances assimilated into Indonesian society as students and government employees (Ex. 7). The respondent was employed in a responsible position by the Indonesian Government prior to his departure for the United States.

The respondent in the instant case concedes that he never experienced persecution prior to his departure from Indonesia. There is also evidence that the property of his father was protected from mob violence by the police of the respondent's local community as recently as June of 1966 (Ex. 10). The respondent was permitted to depart by his government as an exchange visitor and this fact contemplates his return with knowledge that would inure to the benefit of the government of Indonesia. He testified that he has no personal knowledge that the Indonesian Government has stimulated hostility toward the Chinese who live in Indonesia (R-35).

The conditions which would confront the respondent upon returning to Indonesia have counterparts to a certain degree in other countries which from time to time experience mob action by one ethnic group against another. The hazards of personal injury which arise as the result of conflict between majority and minority ethnic groups, in our judgment, are not contemplated within section 243(h) when there is a reasonable showing as in this case that the government in power does make an attempt to control such incidents. Accordingly, we conclude that the respondent has not established that he would be subject to persecution within the meaning of section 243(h) by claiming a fear of persecution by reason of the fact that he is an ethnic Chinese who would be returning to a country which on occasion has experienced mob violence directed against members of his race by individual groups. The appeal will be dismissed.

**ORDER:** It is directed that the order entered by the special inquiry officer on May 31, 1966 denying the respondent's application to withhold deportation to Indonesia under the provisions of section 243(h) of the Act and granting him voluntary departure in lieu of deportation be and the same is hereby affirmed.

### BEFORE THE BOARD

The respondent, of Chinese ethnic origin, is a native and citizen of Indonesia. The Board of Immigration Appeals, on September 15, 1967, entered an order affirming a decision of the special inquiry officer entered on May 31, 1966 denying the respondent's application to withhold deportation to Indonesia under the provisions of section 243(h) of the Immigration and Nationality Act and granting him voluntary departure in lieu of deportation. Counsel for the respondent moves for a reconsideration of this order.

The evidence supporting the respondent's claim of persecution has been fully discussed in our opinion of September 15, 1967 and will not be repeated. After a careful review of the evidence we concluded that the respondent had not established that he would be subject to persecution within the meaning of section 243(h) by claiming a fear of persecution by reason of the fact that he is an ethnic Chinese who would be returning to a country (Indonesia) which on occasion has experienced mob violence directed against members of his race by individual groups.

The thrust of counsel's argument urging error in the Board's conclusion is that section 243(h) does not require an alien to prove that he would be subject to persecution by his government in order to be eligible for relief and that eligibility is established when the evidence affirmatively shows that an alien would be subject to persecution because of mass activity on the part of the dominant race of a country or an organized minority within a country against an ethnic group of which the alien is a member. We do not dispute counsel's argument that the statute does not require proof of persecution by an organized government. However, the statute does give the Attorney General *discretion* to stay deportation only in circumstances where an alien affirmatively shows that he "would be subject to persecution on account of race, religion, or political opinion" in the country to which he is being deported.

The policy of restricting the favorable exercise of discretion to cases "of clear probability of persecution of the particular individual petitioner" has been sanctioned by the courts. *Lena* v. *Immigration and Naturalization Service*, 379 F.2d 536, 538 (C.A. 7, June 7, 1967). Mob action may be a ground for staying deportation under section 243(h) where it is established that a government cannot control the mob. The evidence before us, however, establishes to our satisfaction that the Indonesian Government is able to control mob action.

A recent article in the New York Times (March 25, 1967) submitted by counsel during oral argument states: "The harassment (of the Chinese) varies from one area to another depending on the attitude of local officials. In some cases it (the harassment) seems to meet strong opposition from top Government officials." This is not evidence that the respondent as an individual would be subject to persecution in Indonesia because of his race, religion or political opinion. In fact the respondent testified that he was not aware of any activity by the Indonesian Government to stimulate mass activity and hostility toward persons of Chinese origin (R-34). The evidence of sporadic harassment of ethnic Chinese which varies from one area of Indonesia to another does not amount to the particularized persecution that justifies

a stay of deportation under section 243(h) of the Immigration and Nationality Act. *Cheng Kai Fu, et al.* v. *Immigration and Naturalization Service*, Nos. 237 and 236 (C.A. 2, November 16, 1967).

Counsel argues that the recent amendment of section 243(h) which eliminates the term "physical persecution" and inserts in lieu thereof "persecution on account of race, religion or political opinion" equates section 243(h) with section 203(a)(7) which defines a "refugee" and accordingly the same burden of proof and standards for granting relief is required for both sections of the Act. Counsel refers to the legislative history of the amendment in support of his argument (Congressional Record, Volume III, No. 157, pp. 20995 and 20996, House of Representatives, August 25, 1965).

While it is true that the sponsor of the amendment said that the alien who applies for a stay of deportation under the amended statute "must bear the same burden of proof" as the alien who seeks to enter the United States as a "refugee," nevertheless he made it clear that the amendment "narrows the word persecution by limiting the scope of its interpretation to three specifics: namely, persecution on account of race, persecution on account of religion, or persecution on account of political opinion."

Section 203(a)(7) of the Act grants a conditional visa to an alien who satisfies an immigration officer at an examination in any non-Communist or non-Communist dominated country that "because of persecution or *fear* of persecution on account of race, religion or political opinion (he has) fled from any Communist or Communist dominated area, or from any country within the general area of the Middle East, and (is) unable or unwilling to return to such country or area on account of race, religion or political opinion, and (is) not (a) national of the countries or areas in which (his) application for conditional entry is made . . ." An alien refugee must satisfy an immigration officer that he is otherwise admissible under the entire immigration process before he can be granted a conditional entry whereas a deportable alien regardless of the provision under which he has been found deportable may be granted a stay of deportation if in the "opinion" of the Attorney General he would be subject to persecution on account of race, religion or political opinion. The amendment did not change the basic concept with regard to the test to be applied by the Attorney General in exercising his discretion. It merely limited the scope of section 243(h) to three specifics, namely, persecution on account of race, religion and political opinion rather than one general term, namely, "physical persecution." Under the circumstances, we find no support in the legislative history of the amendment for counsel's argument that an alien deportee is required to do no more than meet

the standards applied under section 203(a)(7) of the Act when seeking relief under section 243(h).

In the absence of convincing evidence that the respondent would be singled out for persecution if he returns to Indonesia because of the fact that he is an ethnic Chinese, we find no basis for granting a stay of deportation under section 243(h) of the Immigration and Nationality Act. The motion will be denied and our order of September 15, 1967 will be affirmed.

**ORDER:** The motion to reconsider is hereby denied; the order entered by the Board of Immigration Appeals on September 15, 1967 is hereby affirmed.