# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-1964

ABDELHADI HOR,

*Petitioner,*

v.

ALBERTO R. GONZALES,

*Respondent.*

_____

Petition to Review an Order of the
Board of Immigration Appeals.
A79-286-712

_____

ARGUED JUNE 10, 2005—DECIDED AUGUST 29, 2005

_____

Before FLAUM, *Chief Judge,* and POSNER and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.*    Abdelhadi Hor was ordered removed from the United States after his claim of asylum was denied. A motions panel of this court denied his motion to stay his removal, on the ground that the probability that he could persuade the merits panel to reverse the order of removal was low. *Hor v. Gonzales,* 400 F.3d 482, 485-86 (7th Cir. 2005). A merits panel, however, is authorized to reexamine a ruling made by a motions panel. *In re HealthCare Compare Corp. Securities Litigation,* 75 F.3d 276, 279-80 (7th Cir. 1996); *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir. 1991). We don't know whether Hor has been

removed from this country as yet, but it makes no difference; the alien's departure no longer moots his challenge to a removal order. *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651 (7th Cir. 2004); *Patel v. Ashcroft*, 378 F.3d 610, 612 (7th Cir. 2004); *Rife v. Ashcroft*, 374 F.3d 606, 615 (8th Cir. 2004).

Hor is an Algerian with a technical background who before coming to the United States on a visitor's visa in 2000 was the chief information officer for a large government-owned manufacturer. He was also an active member of the FLN, the ruling political party of Algeria. In March of 2000 he was stopped at a roadblock set up by members of GIA (Groupe islamique armé), the military wing of the radical Islamic movement that is engaged in what amounts to a civil war with the Algerian government. *Ahmed v. Ashcroft*, 348 F.3d 611, 614 (7th Cir. 2003); *Debab v. INS*, 163 F.3d 21, 23 (1st Cir. 1998); U.S. State Department, *Country Report on Algeria* (2004); U.S. State Department, *Report on Human Rights Practices in Algeria* (2005); U.S. State Department, *Fact Sheet on Foreign Terrorist Organizations* (2005), http://www.state.gov/s/ct/rls/fs/37191.htm; U.S. Central Intelligence Agency, *World Fact Book on Algeria* (2005), http://www.cia.gov/cia/publications/factbook/geos/ag.html; Amnesty International, *Algeria: Asylum-Seekers Fleeing a Continuing Human Rights Crisis*, June 2003, http:// web.amnesty.org/library/Index/ENGMDE280072003. Taken at gunpoint before a leader of the GIA, Hor was ordered to furnish the organization with a list of active members of the FLN and with the security plan of his employer. He was released after promising to comply. He didn't comply, but instead reported the incident forthwith to the Algerian military, which told him that it couldn't protect everyone threatened by the GIA—even an army veteran, as Hor was. It gave him some advice on how to avoid falling into the GIA's clutches.

Five months later, Hor was stopped at another GIA roadblock. Armed men ordered him to lie down on the ground and told him they were going to execute him on the spot in retaliation for his having failed to supply the GIA with the promised information. Hor's uncle, like him an active member of the FLN, had been killed just this way a year earlier. But the police had received a tip about the roadblock, arrived just in time, killed two of the armed men, and saved Hor. Shortly afterwards, following a visit to a psychiatrist who diagnosed Hor as suffering from post-traumatic stress syndrome, and also following the issuance of a "decision" by an Algerian court that "recommend[ed] that [Hor] should be extra cautious and keep low profile," Hor left Algeria for the United States.

He claims that he was persecuted in Algeria on account of his political activity and is at high risk of further persecution if he returns. His testimony, if believed, established persecution. Compare *INS v. Elias-Zacarias*, 502 U.S. 478, 481-83 (1992); *Ahmed v. Ashcroft, supra*, 348 F.3d at 614-16. The immigration judge, seconded by the Board of Immigration Appeals, rejected the claim. The judge believed Hor's testimony about "his involvement with the political party, and his genuine fear of harm," but not about his encounters with the GIA. The judge didn't think the GIA would have allowed five months to elapse from the first encounter before trying to kill Hor for breaking his promise to give the group information: "the Court [i.e., the immigration judge] believes they would have approached the respondent or harmed the respondent long before five months have passed." The judge also didn't believe that, given Hor's status as a veteran and the sensitive information he possessed because of his job, the Algerian military would have refused to protect him against the GIA; or that the GIA could have known that the second roadblock would inter-

cept him, because he was traveling to a seminar when he was stopped rather than to or from work. The judge thought that if Hor's story were true, the GIA would have killed members of Hor's family in revenge, which it has not done.

He noted further that Hor had failed to submit newspaper accounts or other documentary records of the shoot-out at the second roadblock. He also thought it suspicious that the psychiatrist's report did not mention the cause of Hor's post-traumatic stress syndrome. He could "not fully comprehend the purpose of the [Algerian] Court decision recommending that the respondent be extra cautious and keep a low profile. The respondent himself was fully aware that he should keep a low profile and be very cautious, and he did not need the Court to tell him that he should be cautious."

The judge thought that in any event Hor lacked a well-founded fear of further persecution should he be returned to Algeria because he "was not harmed for five months by the GIA after he had promised them to provide the information requested," and "when he needed help, he was able to go to his Government and seek their assistance"—assistance that included the killing of the two assailants at the second roadblock. He was also "able to seek assistance from a Court in Algeria."

It is conceivable that the evidence on which the immigration judge based his determination that Hor was exaggerating his persecution by the GIA really does show this, but that would depend on a knowledge of conditions in Algeria nowhere indicated in the opinion, a common failing in asylum adjudications. *Iao v. Gonzales*, 400 F.3d 530, 533-34 (7th Cir. 2005). It is hardly self-evident that the GIA never allows five months to elapse before mounting an assault against someone who has refused to play ball with it. The group would have needed some time to realize that Hor

was not going to furnish the promised information, and more time to organize an assault with a fair chance of success. It would be no surprise, either, if the GIA had penetrated the company where Hor worked and learned from its mole where Hor would be on the day they tried to kill him.

Algeria has a censored press, and the immigration judge offered no reason for believing that the incident at the second roadblock would have been allowed to be reported, or even that it had been witnessed, other than by the participants—the police, the GIA thugs, and Hor—all of whom might well have decided against reporting the incident to the media. And again one would have to know a lot about Algeria and the GIA to know whether the failure to seek revenge against members of Hor's family, none of whom was active in the FLN, as he had been, would be out of character.

That a psychiatrist would not mention a terrorist incident in a psychiatric diagnosis seems hardly anomalous; and the authenticity of the admittedly quite strange judicial decision is not challenged. In short, there is no reasoned basis for the immigration judge's conclusion, which was based not on Hor's demeanor on the stand but on the unsubstantiated conjectures, summarized above, on which the judge based his assessment of Hor's credibility. Such a decision cannot stand. *Mamedov v. Ashcroft*, 387 F.3d 918, 919 (7th Cir. 2004); *Guchshenkov v. Ashcroft*, 366 F.3d 554, 558 (7th Cir. 2004); *Cordero-Trejo v. INS*, 40 F.3d 482, 485 (1st Cir. 1994); *Jara-Navarrete v. INS*, 813 F.2d 1340, 1344 (9th Cir. 1986).

The government points to the recently enacted REAL ID Act of 2005, which provides that "no court shall reverse a determination made by a trier of fact [in a removal case] with respect to the availability of corroborating

evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). All that this means is that an immigration judge's determination that if there were evidence to corroborate the alien's testimony the alien could and should have presented it is entitled to reasonable deference. The precondition to deference is that the immigration judge explain (unless it is obvious) why he thinks corroborating evidence, if it existed, would have been available to the alien. *Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004); *Zheng v. Gonzales*, 409 F.3d 804, 810 (7th Cir. 2005); *Eta-Ndu v. Gonzales*, 411 F.3d 977, 984 (8th Cir. 2005); *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001); *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000).

The judge criticized Hor's failure to provide newspaper articles, or affidavits from his co-workers, to corroborate his story of the roadblock and the gun battle, and also Hor's failure to submit the documents he had filed with the Algerian court in order to obtain that odd court order. The judge concluded that "some of these incidents which are central to the respondent's claim either have been exaggerated or have not been supported by corroborating evidence when it was available and could have been obtained." But the immigration judge offered no explanation for thinking that this documentation had been available to Hor. It seems unlikely that Hor's co-workers, who surely have a healthy respect for the murderous potential of the GIA, would submit affidavits to the U.S. immigration authorities. Nor is it obvious that Algeria—a military dictatorship in 2000—would have permitted newspaper articles about terrorist attacks. Nor is there any apparent reason to doubt that Hor does not have copies of the documents he filed with the Algerian court. The notion that documentation is as regular, multicopied, and ubiquitous in disordered

nations as in the United States, a notion that crops up frequently in decisions by immigration judges, see, e.g., *Iao v. Gonzales*, *supra*, 400 F.3d at 534; *Gontcharova v. Ashcroft*, *supra*, 384 F.3d at 877-78; *Muhur v. Ashcroft*, 355 F.3d 958, 959-60 (7th Cir. 2004); *Mulanga v. Ashcroft*, 349 F.3d 123, 134 (3d Cir. 2003); *Qiu v. Ashcroft*, 329 F.3d 140, 153 (2d Cir. 2003), is unrealistic concerning conditions actually prevailing in the Third World. To be entitled to deference, a determination of availability must rest on more than implausible assertion backed up by no facts.

At argument the government's lawyer told us that if Hor is entitled to asylum, so is the entire population of Algeria. For he was a supporter of the government and presumably the Algerian population consists largely, though doubtless not entirely, of people who support either the government, and so on Hor's account are persecuted by the GIA, or the Islamic radicals, who maybe are persecuted by the government. But this is a considerable exaggeration. Hor was persecuted by the GIA because he was an FLN activist with access, by virtue of his job as chief information officer of a large manufacturer, to a security plan that the GIA could use to destructive ends. We do not know how many Algerians are in a position similar to Hor's—an FLN activist with access to information prized by the GIA. Perhaps few. Fewer still, presumably, are those who, like Hor, having information prized by the GIA and having been coerced into promising to supply it to the GIA, became marked for death when they break their promise.

What is true is that nongovernmental persecution is much less common than governmental persecution. You cannot even claim asylum on the basis of persecution by a private group unless the government either condones it or is helpless to prevent it, but if either of those conditions is satisfied, the claim is a good one. As explained in *Balogun v.*

*Ashcroft*, 374 F.3d 492, 499 n. 8 (7th Cir. 2004), " '[P]ersecution cognizable under the Act can emanate from sections of the population that do not accept the laws of the country at issue, sections that the government of that country is either unable or unwilling to control.' *Borja v. INS*, 175 F.3d 732, 735 n. 1 (9th Cir. 1999) (en banc); *see also Chitay-Pirir v. INS*, 169 F.3d 1079, 1081 (7th Cir. 1999); *Sotelo-Aquije v. Slattery*, 17 F.3d 33, 37 (2d Cir. 1994) ('[T]he statute protects against persecution not only by government forces but also by nongovernmental groups that the government cannot control.'); *Bartesaghi-Lay v. INS*, 9 F.3d 819, 822 (10th Cir. 1993) ('[I]t is apparently agreed that the possible persecution to be established by an alien in order for him to be eligible for asylum may come from a non-government agency which the government is unwilling or unable to control.')." See also *Guchshenkov v. Ashcroft*, *supra*, 366 F.3d at 557; *Bace v. Ashcroft*, 352 F.3d 1133, 1138-39 (7th Cir. 2003); *Al-Fara v. Gonzales*, 404 F.3d 733, 739 (3d Cir. 2005); *Lopez-Soto v. Ashcroft*, 383 F.3d 228, 234 (4th Cir. 2004); *Andriasian v. INS*, 180 F.3d 1033, 1042-43 (9th Cir. 1999); *Rosa v. INS*, 440 F.2d 100, 102 (1st Cir. 1971). The Board of Immigration Appeals so acknowledged more than thirty years ago. *In re Tan*, 12 I. & N. Dec. 564, 568 (BIA 1967).

And here the response of the Algerian military to Hor's request for protection, and the curious judicial decision, play a decisive role in our consideration of Hor's petition. The fact that the military was unable to protect a military veteran, and, even more, the fact that all a court could offer Hor in the way of protection was advice to maintain a low profile, is strong evidence that the government of Algeria is indeed incapable of protecting Hor. (There is corroboration in reputable-seeming reports on conditions in Algeria. U.S. State Department, *Patterns of Global Terrorism, Appendix B, Background Information on*

*Designated Foreign Terrorist Organizations* (2004), http://www.state.gov /s/ct/rls/pgtrpt/2003/31711.htm; Human Rights Watch, *World Report: Middle East and Northern Africa Overview* (2003), http://www. hrw.org/wr2k3/mideast.html; Amnesty International, *Report on Algeria* (2002), http://web.amnesty.org/web/ ar2002.nsf/ mde/ algeria; Amnesty International, *Algeria—Civilian Population Caught in a Spiral of Violence*, Nov. 1997, http://web.amnesty.org/library/Index/engMDE280231997.) The military and the court told Hor in effect: you'll have to protect yourself; we can't protect you. A person who cannot obtain official protection against persecution on account of his politics (as here), or some other recognized ground for asylum, by a rebel or terrorist group has a solid claim for asylum. *Balogun v. Ashcroft*, *supra*, 374 F.3d at 499 n. 8; *Chitay-Pirir v. INS*, *supra*, 169 F.3d at 1081; *Ochoa v. Gonzales*, 406 F.3d 1166, 1170 (9th Cir. 2005); *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 423 (3d Cir. 2005); *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004). That appears to be Hor's situation, though further proceedings may cast it in a different light. We do not rule that Hor is entitled to asylum, but only that the Board's decision is not supported by substantial evidence. The petition for review is therefore granted and the case remanded to the Board for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*