# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1123

MAMADOU T. DIALLO,

*Petitioner,*

*v.*

ALBERTO R. GONZALES[Œ], Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A95 588 624.

ARGUED DECEMBER 14, 2005—DECIDED MARCH 9, 2006

Before RIPPLE, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Mamadou T. Diallo, a native
and citizen of Guinea, petitions for review of an order of the
Board of Immigration Appeals affirming the Immigration
Judge's denial of his application for asylum, withholding of
removal, and relief under the Convention Against Torture.
Since the IJ improperly required Diallo to present corrobo-
rating evidence, we vacate the decision of the BIA.

---

[Œ] Pursuant to Federal Rule of Civil Procedure 43(c)(2), we
have substituted the current Attorney General of the United
States, Alberto R. Gonzales, for his predecessor as the named
respondent.

Diallo arrived in the United States in late 2001 and applied for asylum in July 2002 on the basis of his political opinion. He claimed that he was a member of Rally of the Guinean People (RPG), a political party that opposes the regime of Guinea's current leader, President Lansana Conte. Diallo says that he was arrested and imprisoned for sixteen months in December 1998 after attending a large rally protesting the arrest of Alpha Conde, RPG's leader. He says that, while he was in prison, he was pressured to sign a statement implicating Alpha Conde in illegal activities, and, when he refused, he was tied up by the wrists and beaten. He says that guards beat him almost every day with batons. Diallo further alleges that there were fifteen people in his prison cell and that the cell was unsanitary, lacking a bathroom. According to him, during the first six months of his sixteen-month imprisonment, he was not allowed out of his cell except to go to court. Finally, he says that he was given food and water only once a day and that two of the people he was imprisoned with died.

On his release, Diallo was forced to sign a statement agreeing not to take part in any more political activities. He continued to participate in political activities after his release anyway, and in October 2001 he participated in a rally protesting a referendum that would allow President Lansana Conte to serve an unlimited number of terms. Diallo says that the police wanted to arrest him for his participation in this rally, and so he was forced to flee the country.

The IJ found that Diallo's testimony was "general" and "meager" and that Diallo therefore needed to provide corroborating evidence. The IJ decided that Diallo had failed to corroborate his claim in several respects. In particular, he decided that, if the 2001 protest rally was as large as Diallo claimed, Diallo should have been able to provide some "proof of the demonstration other than his general testimony." The IJ also decided that Diallo

should have been able to provide medical records to support his claim that he was injured while imprisoned, evidence from RPG of his political activities and imprisonment, or affidavits from his family in Guinea to "verify his claim." Finally, the IJ discounted a summons and arrest warrant Diallo presented because, in the IJ's opinion, these documents contained French spelling and grammatical errors and therefore could not have been prepared by "a judicial officer . . . who would have more than an elementary education . . . ." The BIA summarily affirmed the IJ's decision.

Diallo contends that the BIA's decision cannot stand because he did in fact testify consistently and credibly. Because the BIA summarily affirmed, we review the decision of the IJ. *Tabaku v. Gonzales*, 425 F.3d 417, 421 (7th Cir. 2005). We have held that the asylum claim of a credible applicant cannot be denied solely because the applicant failed to submit corroborating evidence. *Dawoud v. Gonzales*, 424 F.3d 608, 612 (7th Cir. 2005);[1] *see also* 8 C.F.R. § 208.13(a). Rather, an IJ who denies an asylum claim for lack of corroboration must first make an express credibility finding. *Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004). The IJ must also explain why it is reasonable to expect corroboration and explain why the applicant's reason for not supplying corroboration is inadequate. *Id.*

The IJ in this case did not make an express credibility finding, and the findings he did make about Diallo's

---

[1] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, signed into law on May 11, 2005, allows an IJ to require a credible applicant to provide corroborating evidence in certain circumstances, *id.* § 101(a)(3)(B)(ii); *see Dawoud*, 424 F.3d at 613. However, this act does not apply to Diallo because he filed his asylum application before May 11, 2005. Pub. L. No. 109-13 § 101(h)(2); *see Dawoud*, 424 F.3d at 613.

evidence are not supported by "specific, cogent reasons." *Ssali v. Gonzales*, 424 F.3d 556, 561-62 (7th Cir. 2005) (internal citation and quotation marks omitted). The IJ said that Diallo's testimony was "meager" and "general," presumably meaning that it was not detailed enough to be believable. However, a "passing reference implying doubt" about an applicant's credibility is not an express credibility finding. *See Nakibuka v. Gonzales*, 421 F.3d 473, 478-79 (7th Cir. 2005) (IJ's finding that applicant's testimony was "vague and confusing" not an adverse credibility determination). Furthermore, even if we could infer an adverse credibility finding from the IJ's "meager" and "general" language, the IJ never explained why he thought Diallo's testimony lacked detail.

The IJ also never explained why it was reasonable to expect Diallo to provide corroborating evidence from RPG of his political activities and imprisonment, or affidavits from his family members to "verify his claim." Diallo testified that he had not been in contact with his family members since leaving Guinea in 2001. In addition, the IJ did not explain why he believed that the RPG, an opposition political party in a country where such parties' activities are restricted, would have been able to provide Diallo with the information the IJ wanted. *See Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005) (not necessarily reasonable to expect Algerian applicant's co-workers to submit affidavits describing attack by terrorist organization on the applicant since co-workers might fear the terrorist organization).

Although the IJ attempted to explain why it was reasonable to expect Diallo to corroborate the 2001 rally, his explanation is not convincing. He implies that, given the size of the rally and the existence of opposition newspapers in Guinea, the rally would have received some press coverage. However, it is not evident that the opposition press would always be able to cover a rally organized by opposition political parties in a country where political

opposition to the government is suppressed. *See id.* at 501 (finding it not obvious that Algeria's military dictatorship would have allowed newspaper articles about terrorist attacks).

Finally, Diallo did attempt to submit corroborating evidence in the form of a summons and arrest warrant, and we are troubled by the IJ's rejection of this evidence. The IJ believed that these documents were suspect because they contained French grammatical and spelling errors. He also pointed out that the summons failed to explain why Diallo was required to appear, and the arrest warrant failed to indicate the specific law Diallo was accused of violating. We do not think that these are cogent reasons for questioning the credibility of Diallo's documents. Nowhere in his decision does the IJ explain why he is qualified to interpret French documents. Furthermore, even if we were confident that the IJ accurately identified errors in these documents, the IJ's finding that Guinean "judicial officers" would not make spelling and grammatical mistakes is purely speculative, as are his findings that the summons would necessarily explain why Diallo was required to appear and the arrest warrant would include a citation to a specific law. *See Tabaku*, 403 F.3d at 423 (IJ's speculation not a proper basis for an adverse credibility finding); *Huang v. Gonzales*, 403 F.3d 945, 949-50 (7th Cir. 2005) (same). Certainly even educated professionals have been known to make spelling and grammatical mistakes from time to time. In any case, the IJ never explains why he thinks the summons and arrest warrant were actually written up by a "judicial officer" as opposed to an assistant or a secretary who might not have as much training. As for the lack of specificity in the arrest warrant and summons, the background materials on Guinea in the record indicate that the country is essentially a dictatorship. Therefore it is not clear that the authorities would always tell individuals under arrest the exact code section they were accused of violating or explain

to individuals in advance why they were being sought for questioning.

Since the IJ did not make an adverse credibility finding and did not adequately explain his reasons for requiring corroborating evidence, we VACATE the order of the BIA and REMAND for proceedings consistent with this opinion. Petitioner Diallo may recover his costs in this court.

A true Copy:

      Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*