UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 14, 2006
Decided June 22, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3432

HERBERTH H. LOPEZ,
               *Petitioner*,

    *v.*

ALBERTO GONZALES,
               *Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

No. A95-575-271

## O R D E R

Herberth Hernandez Lopez, a native and citizen of Guatemala, entered the United States without inspection in 1996. The former Immigration and Naturalization Service eventually initiated removal proceedings and Lopez applied for asylum, withholding of removal, and protection under the Convention Against Torture. Lopez had informed Guatemalan police that Freddie Burgos killed two people, and he left Guatemala after Burgos's family threatened to kill him in retaliation for Burgos's death in prison. Lopez claims that he is a member of a particular social group: either the narrow group of those targeted for retaliation by the Burgos family, or the larger group of all persons at risk of harm because they assisted police in bringing criminals to justice. Because the evidence does not compel a conclusion contrary to the findings of the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA"), we deny Lopez's petition for review.

The facts of the case are not in dispute because the IJ found Lopez credible. Lopez testified that he was good friends with Manuel De La Cruz. De La Cruz also had been a very close friend of Freddie Burgos, but when civil war broke out in Guatemala, De La Cruz joined the army and Burgos joined the guerilla forces, ending their friendship.

In April 1992 Lopez was walking with De La Cruz and De La Cruz's niece, Maida, when Burgos tried to run them over with the car he was driving. The two men were able to move out of the way, but the car struck Maida, killing her. Lopez and De La Cruz reported the incident to the police. When Burgos learned that they had reported the incident, he threatened to kill them. Burgos was charged with killing Maida but was not arrested because the police were unable to find him.

On December 25, 1995, Burgos shot and killed De La Cruz while he was celebrating Christmas in his home. Lopez witnessed the shooting along with three other people and reported it to the police. Burgos was arrested and taken into custody; ten days later he was killed in jail. Burgos's family blamed his death on Lopez because he was jailed after Lopez reported the killing to the police. The family members threatened Lopez by telephone, saying that he would pay with his life for what happened to Burgos. Lopez left the country after this threat.

Lopez testified that he was afraid to return to Guatemala because Burgos's family will still want revenge and he believes they will kill him and his son or both. He explained that he did not think the police would protect him because they have poor resources and would not dedicate time or money to investigate something they regard as "a threat or something of a family feud." He also said that as former guerrillas Burgos's family has many connections, so relocating to a different city in Guatemala would not ensure his safety.

The IJ held that Lopez was ineligible for asylum because he did not apply within a year of his arrival in the United States. The IJ also held that Lopez was ineligible for withholding of removal because the threat he received did not constitute persecution and because he failed to establish that he feared persecution on account of a protected ground, rather than a purely personal matter. The BIA affirmed in a short order, stating that Lopez failed to present "a nexus between any incident described and a protected ground under the Act. His fear is based on a personal dispute only."

Lopez does not contest the denial of his requests for asylum or relief under the Convention Against Torture. He argues only that the IJ and BIA erred in denying his claim for withholding of removal based on his membership of a particular social group.

Where the BIA adopts and affirms an IJ's order, the IJ's decision constitutes the final decision of the BIA. *Giday v. Gonzales*, 434 F.3d 543, 547 (7th Cir. 2006). We will affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole, and reverse only if the evidence compels a contrary conclusion." *Ali v. Ashcroft*, 395 F.3d 722, 731 (7th Cir. 2005) (internal citation and quotation marks omitted). We review the BIA's legal conclusions de novo. *Mabasa v. Gonzales*, 440 F.3d 902, 906 (7th Cir. 2006).

To qualify for withholding of removal, Lopez must show that it is more likely than not that if returned to Guatemala his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Kobugabe v. Gonzales*, 440 F.3d 900, 901 (7th Cir. 2006). In defining a qualifying social group, we look to whether members share a "common, immutable characteristic" that they cannot or should not be required to change. *Lwin v. INS*, 144 F.3d 505, 511-12 (7th Cir. 1998); *see also Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 672 (7th Cir. 2005). And we have repeatedly held that a dispute based merely on personal animosity, private violence, or a grudge cannot give rise to a claim for asylum. *See Jun Ying Wang v. Gonzales*, 445 F.3d 993, 998-99 (7th Cir. 2006) (collecting cases); *see also Marquez v. INS*, 105 F.3d 374, 380 (7th Cir. 1997) ("A personal dispute, no matter how nasty, cannot support an alien's claim of asylum.").

Although Lopez attempts to categorize the danger he faces as being on account of his membership in a particular social group, his testimony shows that his claim is based on a personal dispute. *See Jun Ying Wang*, 445 F.3d at 999 (holding that fear of retribution based on cooperation with authorities was a personal dispute rather than one based on membership in a particular social group). Lopez testified that the reason the police would not protect him was because the dispute would be regarded as "something of a family feud." And his first definition of his social group—persons targeted for retaliation by the Burgos family—does not require for membership any common or immutable characteristic, but rather could be applied to any personal dispute between two people. In contrast, Lopez's alternative definition of his social group—persons who have assisted police in bringing criminals to justice—is broader than the basis of his feared persecution. Lopez does not fear persecution from the Burgos family on account of his general willingness to report crimes, but rather because he informed the police that Freddie Burgos murdered two people which led to Burgos's death in prison. Lopez has not argued that he will be persecuted on account of his willingness to report crimes. He has argued only that the Burgos family seeks retaliation for his specific acts in reporting Freddie's crimes. As a result, the record does not compel reversal of the BIA's holding that Lopez failed to show membership in a particular social group.

Although not addressed in Lopez's brief, and thus waived, *see Asere v. Gonzales*, 439 F.3d 378, 381 (7th Cir. 2006), the IJ also did not err in determining that Lopez failed to show that he experienced past persecution. Lopez testified only that he received a phone call from Burgos's family stating that once they buried Freddie "they were going to find the way that I would pay for his life." He then left Guatemala for the United States. Although threats "of a most immediate and menacing nature" may constitute persecution, unfulfilled threats generally do not. *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003). Moreover, Lopez cannot claim relief on the basis of harm by a private group unless the government either condones it, or is helpless to prevent it. *Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005). Lopez must show that the Guatemalan government is "unwilling and completely unable to afford protection." *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006). We require more than Lopez's conjecture that the police would be indifferent to his plight. *See Hor*, 421 F.3d at 502 (actions of radical Islamists could be attributed to government where military told petitioner it could not protect him from terrorists and Algerian court advised him to "keep a low profile"); *Guchshenkov v. Ashcroft*, 366 F.3d 554, 557 (7th Cir. 2004) (actions of Kazakh thugs could be attributed to government where police responded to petitioner's assault report by saying that they had "more important things to take care of"). The IJ did not err in determining that the threats from Burgos's family did not constitute persecution.

For these reasons, we DENY Lopez's petition for review.