NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2007
Decided October 29, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 06-2500

| | |
|---|---|
| FENG LI,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals |
|     *v.* | No. A95-305-515 |
| PETER D. KEISLER, Acting<br>Attorney General of the United<br>States,<br>    *Respondent.* | |

**O R D E R**

Feng Li, a native of China, petitions for review of an order of the Board of Immigration Appeals. Li lawfully entered the United States in November 2001. After he overstayed his visa, he requested asylum, withholding of removal, and relief under the Convention Against Torture on the ground that he had been persecuted by Chinese authorities because he was a Christian and, if returned to China, would face future persecution. An Immigration Judge denied Li's application, finding that Li was not credible. The Board of Immigration Appeals affirmed. We deny Li's petition for review.

Li attached to his asylum application a handwritten personal statement reporting that he had been arrested, detained, interrogated, beaten, and had lost his job teaching music because he practiced Christianity. The key incident in his narrative occurred in August 2001, when he and a small group of Christians assembled at a friend's home in the southern city of Guilin to sing and pray. According to Li, their gathering was interrupted when police arrived and accused them of operating an "underground and unregistered house church." Li asserted that the police arrested all attendees and took them to the local public security bureau detention station, where, Li claims, he was held for 15 days. According to Li, while he was in detention, the police questioned him on three occasions concerning the church's operation and the identity of its organizers. On each occasion, the police also beat him, striking him with a rubber baton and kicking him, resulting in lacerations to his hands. He claimed that he was released after paying a substantial fine and subsequently was fired from his job.

At the removal hearing, Li testified about his claimed persecution and his flight from China to the United States. Li called one witness, Wei Kai, who testified that she knew Li in Guilin and had attended church functions with him there. She further testified that a friend in her church group in Guilin told her that Li had been arrested for participating in a house-church group and was forced to pay a fine to secure his release.

The IJ denied asylum, finding Li's testimony incredible for a litany of reasons and thus disbelieving that he was detained, interrogated, and beaten, as he claimed. First, the IJ was troubled because Li's passport was issued during the time period he claimed to be in detention, and the IJ reasoned "[I]t is clear that the respondent could not be in custody for 15 days as he asserted." Second, the IJ noted that Li conceded he lied to obtain his U.S. visa by misstating his reason for visiting the United States, his job prospects, and his financial status. Third, the IJ found significant that Li's testimony that he had been detained at the "Jinji Lin" detention center conflicted with the English translation of his personal statement, which identified the center as the "Heping" district detention center. Fourth, the IJ found that Li could not explain why his visa was dated October 15, 2001, when he claimed to have obtained it on October 2. Fifth, the IJ thought that there was confusion as to whether Li received written notice of his employment termination in China. Sixth, the IJ believed that Li tried to "embellish his stated religious belief," noting that Li "clearly" had not regularly attended church and doubting whether Li was "truly interested in coming to the United States because of any religious persecution." Seventh, the IJ concluded that Li exaggerated his wife's persecution in China because he first testified that she had been demoted and later testified that she had been fired. Additionally, the IJ found that Li failed to produce corroborating documents that he left in China. The BIA adopted and affirmed the IJ's decision.

Li challenges the IJ's credibility determination, arguing that the inconsistencies identified by the IJ are, at most, minor. Because the BIA summarily affirmed, we review the decision of the IJ. *See Diallo v. Gonzales*, 439 F.3d 764, 765 (7th Cir. 2006). We give the IJ's credibility determinations a high degree of deference "so long as they are supported by specific cogent reasons that bear a legitimate nexus to the finding." *See Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007). Even though we might have reached a different result, we will uphold the IJ's adverse credibility determination as long as it is supported by substantial evidence in the record, *see Giday v. Gonzales*, 434 F.3d 543, 553 (7th Cir. 2006), and will reverse only if Li demonstrates that the record compels it, *see Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006).[1] The IJ's conclusion, however, must be supported by specific, cogent reasons that bear a legitimate nexus to the determination, *see Giday*, 434 F.3d at 550. Any discrepancy or inconsistencies in an alien's testimony can support an adverse credibility finding, but only when they go to the heart of the applicant's claim, *see Adekpe v. Gonzales*, 480 F.3d 525, 531 (7th Cir. 2007).

Two factors on which the IJ relied find support in the record and provide a basis for the adverse credibility determination. First, Li's passport bore a stamp indicating that it was issued on a date Li claimed he was detained. This discrepancy caused the IJ to disbelieve the central elements of Li's story—that Li was arrested, imprisoned for 15 days, and beaten. Although Li explained that he paid a service to obtain the passport and did not know that how the service operated, he could provide no evidence to corroborate the dates of his detention, and the IJ was entitled to find his explanation unpersuasive and conclude that the evidence pointed to a different explanation—that Li was lying. *See Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir.2003).

Second, Li admitted to fabricating documents to obtain his U.S. visa. It is within the IJ's discretion to determine that an asylum applicant who lied to consular officials is lying again in his application for asylum. *See Alsagladi v. Gonzales*, 450 F.3d 700, 701-02 (7th Cir. 2006); *but see Dong v. Gonzales*, 421 F.3d 573, 578-79 (7th Cir. 2005) (false documents used only to gain entry to the United States with no bearing on alleged persecution not valid basis for adverse credibility determination). Li lied in his visa application about his purpose for travel to the

---

[1]   Because Li petitioned for asylum in 2002, his case is not affected by the revised credibility standards of the REAL ID Act of 2005, see Pub. L. No. 109-13, 119 Stat. 231. The new standards apply only to petitions for asylum made on or after May 11, 2005. *Id*. at § 101(h)(2). *See also Diallo*, 439 F.3d at 766 n.l; *Dawoud v. Gonzales*, 424 F.3d 608, 613 (7th Cir. 2005).

United States, his job status, and the amount of money in his bank account, and the it was within the IJ's discretion to determine that he lied again about being persecuted for his religious beliefs in China.

Most of the inconsistencies on which the IJ anchored his adverse credibility determination, however, were either easily explained or immaterial to Li's claim of persecution. First, Li adequately explained the discrepancy in the name of the district of the detention center where he was held, and as we have observed, "credibility determinations should not be based upon easily explained discrepancies." *Adekpe*, 480 F.3d at 531; *Giday*, 434 F.3d at 551. The IJ ignored Li's explanation that the personal statement as he wrote it—in Chinese—never identified the name of the detention center's district, let alone mentioned Heping. And this court has repeatedly admonished immigration judges to be sensitive to the possibility of misunderstandings caused by the use of translators. *See Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir. 2005) (collecting cases); *see also Tun v. Gonzales*, 485 F.3d 1014, 1029-30 (8th Cir. 2007) (unfair for IJ to rely on inconsistencies in testimony on the location of torture when there was an indication they were caused by translation error).

Second, the date that Li received his visa does not go to the heart of his asylum claim. *See Tandia v. Gonzales*, 487 F.3d 1048, 1053 (7th Cir. 2007); *Hanaj v. Gonzales*, 446 F.3d 694, 698, 700 (7th Cir. 2006). Even though Li could not explain why his visa bore a date different from the day he claimed to have acquired it, at most, this inconsistency was "trivial" and "superficial" and cannot form the basis of an adverse credibility determination. See *Tadesse v. Gonzales*, 492 F.3d 905, 910 (7th Cir. 2007); *Adekpe*, 480 F.3d at 531.

Third, there is no basis in the record to support the IJ's finding that Li testified inconsistently as to whether he received written notice about his discharge from his music-teaching job. Li consistently testified that he received no written notice of his termination and the only written notice that he saw was the letter that the Bureau of Education addressed to the school and that a school official showed, but did not give, to him.

Fourth, there is also no basis for the IJ's conclusion that Li embellished his claim by testifying that he frequently attends church. Though his witness testified that she saw Li at church in Los Angeles only in July 2002, this is consistent with Li's testimony that he constantly travels around the country looking for work. The IJ did not explain why he discounted Li's testimony that he goes to church when he is able, occasionally attends English services, and prays on his own at home. In any event, the frequency of his church attendance has nothing to do with whether he was persecuted for his religious beliefs in China. *See Huang v. Gonzales*, 403 F.3d 945, 950 (7th Cir. 2005).

Fifth, the IJ's finding that Li embellished his testimony about his wife's employment was based on a trivial inconsistency—Li testified first that his wife had been demoted and later that she had been fired. And the IJ did not say why he disbelieved Li's explanation—that he had not thought to discuss his wife's discharge when first questioned about her. *See Adekpe*, 480 F.3d at 531; *Giday*, 434 F.3d at 551.

Although most of the IJ's reasons for finding Li incredible were not based on substantial evidence, the discrepancy regarding the issuance of Li's passport and the falsified documents he prepared to obtain his visa were substantive reasons for the IJ to find him incredible, and they provide a sufficient basis for us to uphold the adverse credibility determination. *See Huang v. Gonzales*, 453 F.3d 942, 947 (7th Cir. 2006). And, although we might have reached a different conclusion, we cannot overturn an IJ's credibility determination just because substantial evidence would support an alternate finding. *See Feto*, 433 F.3d at 912.

We have considered many cases where asylum applicants, particularly Chinese applicants, gain entry into the United States by tapping into a black market network of brokers, smugglers, and corrupt government officials to obtain falsified or fraudulent travel documents. *See, e.g.*, *Jiang v. Gonzales*, 485 F.3d 992, 996 (7th Cir. 2007). In most cases, the IJ has no way of knowing the practices for obtaining travel documents in these countries and thus does not have sufficient information to determine whether an asylum applicant who has used false travel documents is lying about claimed persecution. We urge the Department of Justice to consider the issue of what weight an IJ should give to falsified or fraudulent travel documents when determining an asylum applicant's credibility and to articulate a standard that would assist the IJs in their analyses.

But in this case, the IJ simply did not believe that Li was arrested, detained, and persecuted for his religious beliefs. And the IJ acted within his discretion in drawing this conclusion based on discrepancy between the date Li's passport was issued and the dates he claimed he was detained and on Li's admission that he lied to U.S. consular authorities when he obtained his visa. We therefore DENY Li's petition for review.