In the

# United States Court of Appeals
### For the Seventh Circuit

No. 11-3189

NAZIRMOHAMMAD I. VAHORA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A 088-558-982

ARGUED MAY 31, 2012—DECIDED FEBRUARY 25, 2013

Before MANION, KANNE, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Nazirmohammad I. Vahora is a citizen of India. He is also Muslim. In 2002, a train caught fire in Gujarat, India, where he lived. Many Hindu pilgrims and activists were killed, and violence between Hindus and Muslims followed. Vahora testified that he and several Muslim friends were shot in the days after the train fire by local Hindu religious or

political leaders, and that these persons continued to pursue him throughout India in the four years he remained there. The Board of Immigration Appeals ("BIA") affirmed the immigration judge's conclusion that the persecution of which Vahora complains was not carried out by persons the government of India was unable or unwilling to control. While evidence in the record reflects that the government of India has taken steps to prosecute persons alleged to be responsible for the violence in the aftermath of the train burning, other than a conversation with a police officer whom he said visited him in the hospital and advised him to tell people that he was shot randomly during a police fight, Vahora never sought help from any authorities. Because substantial evidence supports the BIA's determination that Vahora was not persecuted by persons the government of India is unable or unwilling to control, we deny the petition for review.

## I. BACKGROUND

The immigration judge accepted Vahora's testimony as true for the purposes of its decision, and the narrative that follows reflects Vahora's account. On February 27, 2002, at least fifty-eight people were killed after a train caught fire near the Godhra train station in Gujarat, India. Most of those killed were Hindu pilgrims and activists. The tragedy led to increased tension between Hindu and Muslim groups in the region, as there was suspicion that a mob of Muslim individuals had attacked the train and was responsible

for the fire. A period of violence and riots followed, resulting in the death of nearly 1,000 people.

Vahora is Muslim. He testified at a hearing before an immigration judge that on March 3, 2002, he and three of his friends were sitting at a teahouse in Gujarat when two Hindu religious and political leaders, accompanied by four or five police officers, approached Vahora and his friends. He said the two, whom he described in his statement as religious and political leaders, were Sandeep Patel, the head of a local unit of the Bharatiya Janata Party ("BJP"), a political party, and Ketan Mistry, the local leader of the Vishwa Hindu Parishad ("VHP"), a Hindu nationalist organization.

Vahora testified that the Hindu leaders threatened him and said the country was meant for Hindus and not for Muslims. They then blamed Vahora and his friends, who were also Muslim, for the burning of the train. Vahora said that after one friend denied that allegation, Patel took a gun from one of the policemen and fatally shot Vahora's friend. Vahora stated that his other friend tried to resist, but that Patel shot and killed him as well. Vahora testified that Patel then shot him in the chest and left, thinking Vahora had died.

Vahora recounted that while he recovered in the hospital, a police officer named Mr. Bhatt came to interview him. Vahora said that after he told Bhatt what had happened, Bhatt told him to tell everyone that police were fighting at the time and that he just got caught by a bullet. Vahora said that he complied with Bhatt's suggestion and stated in a report that he was struck by a "police bullet."

Soon after Bhatt's visit, Vahora stated that Patel came to the hospital, displayed a gun, warned him to maintain his story about being injured in a "police firing," and threatened to kill him if he did not cooperate. Vahora said he feared for his life and so did not report the incident to the police. Vahora stated that he did not leave his home for approximately five months after he left the hospital because he was afraid. He said that when he did leave his home, he encountered Patel at a grocery market and Patel threatened him, asking him whether he wanted to survive. Scared for his safety, Vahora said he left Gujarat to stay with his sister in Mumbai in July 2002.

Vahora claimed that one year later, in August 2003, he ran into Mistry in Mumbai. Vahora stated that he gave Mistry false information when asked his current address, but that Mistry started visiting his home looking for him and even called him one night to tell him they were going to kill him. Vahora stated that two days later, the leaders, along with eight to ten boys, knocked him off his bike and hit him, and that he was only saved when local shopkeepers and taxi drivers rushed to assist him.

Vahora stated that he then moved to Delhi and began working at a hotel there in November 2003. Two years later, he said, Patel and some others came to the hotel's front desk and asked for him. He said that when he saw one with a knife, he ran outside, and they assaulted him but ran away when the hotel owner came to the scene. Vahora said that he returned to his hometown

because he missed his wife and brothers, saw the leaders when he and his wife were out for a walk, and was again saved when shopkeepers came to his rescue.

Vahora testified that he left for Guatemala a few days later and arrived there in February 2006. A person there helped him travel through Mexico and then into the United States, where he said he arrived on June 29, 2006. He filed his application for asylum on June 28, 2007. A hearing took place before an immigration judge. The immigration judge gave Vahora "the benefit of the doubt" and concluded that he had timely applied for asylum within one year of his entry into the United States. Although the immigration judge stated that Vahora set forth a "somewhat improbable, or at least implausible" story that two local Hindu leaders continued to pursue him even after he left Gujarat, the immigration judge declined to make an adverse credibility finding. Instead, the immigration judge ruled that even accepting Vahora's testimony as true, Vahora had not presented a cognizable claim of past persecution or shown that he had a well-founded fear of future persecution because he did not demonstrate that the Indian government was unable or unwilling to protect him. On appeal, the Board of Immigration Appeals affirmed, also ruling that Vahora failed to show that he suffered past persecution or that he had a well-founded fear of future persecution by a group that the government is unable or unwilling to control. Vahora now petitions this court for review.

## II. ANALYSIS

The Board of Immigration Appeals issued its own opinion rather than simply adopting the immigration judge's decision, and we will uphold the BIA's determination so long as it is supported by substantial evidence. *Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1018 (7th Cir. 2011). Under this standard, we let the agency's determination stand "if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Raghunathan v. Holder*, 604 F.3d 371, 376 (7th Cir. 2010) (citations omitted).

To receive asylum, Vahora bears the burden of proving that he is a "refugee" within the meaning of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42). 8 C.F.R. § 1208.13(a). A "refugee" under the INA is a person who is unable or unwilling to return to his home country, "and is unable or unwilling to avail himself or herself of the protection of [ ] that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). When a petitioner establishes that he was the victim of past persecution, a rebuttable presumption that he has a well-founded fear of persecution in the future results. 8 C.F.R. § 208.13(b)(1); *Zhou Ji Ni*, 635 F.3d at 1018.

To constitute persecution, the harm suffered must be sufficiently severe. The conduct in question must rise above the level of mere harassment; the conduct must "threaten death, imprisonment, or the infliction of sub-

stantial harm or suffering." *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996). Vahora testified that he was shot, which is unquestionably sufficiently severe. The government also does not contest that Vahora was shot "on account of" his religion.

That does not end the inquiry, however. A petitioner will not receive asylum if he could relocate to another part of his country of nationality and it would be reasonable under the circumstances to expect him to do so. 8 C.F.R. § 208.13(b)(2)(ii); *Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008). In addition, and most relevant here, "persecution" under the INA does not encompass purely private actions. *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011). The INA does not afford relief, for example, to "those who are unfortunate enough to be victims of ordinary crime or generalized chaos." *Escobar v. Holder*, 657 F.3d 537, 543 (7th Cir. 2011). Rather, to receive protection under the statute, the persecution must be inflicted by the government, or by private actors whom the government is unable or unwilling to control. *Jonaitiene*, 660 F.3d at 270. It was on this basis that the immigration judge, and later the BIA, denied Vahora's asylum request.

Vahora maintains that the BIA wrongly concluded that he did not establish that he was persecuted, or had a well-founded fear of future persecution, from persons that India's government is unable or unwilling to control. Vahora predicates his claim of persecution on the actions of Patel and Mistry. He did not suggest in his testimony that Patel or Mistry worked for India's

government, nor did he present any evidence that they did. He instead described them as local leaders of a political party and a Hindu nationalist organization. Because Vahora alleges persecution by private actors, to receive asylum he must show that India's government "either condones [the persecution] or is helpless to prevent it." *Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005).

The BIA's conclusion that Vahora failed to show that the government of India was unable or unwilling to protect him is supported by substantial evidence. The State Department's Country Report on Human Rights Practices for 2008 reflects that the government of India has taken steps to punish the persons responsible for the violence in Gujarat in 2002, including local leaders of the BJP and VHP and local police officers. But Vahora did not seek assistance from the authorities and never filed any sort of report of what he now says happened to him.

Vahora made no attempt to seek protection from the federal or state government during the four years he remained in India prior to his February 7, 2006 departure, even after he relocated to different cities throughout India in an attempt to stay away from local BJP and VHP leaders from his hometown. He also did not complain to anyone in authority about his assailants after the incidents in Mumbai and Delhi. Although Vahora speculated that reporting to authorities would have been futile, substantial evidence supports the BIA's determination otherwise. *Cf. Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) (stating an

applicant need not have reported the persecution if doing so would have been futile or subjected him to further abuse). The BIA pointed to the 2008 Country Report which indicates that the Indian government was continuing efforts to find those persons responsible for violence in 2002 following the train burning at Godhra, that police officers were being tried for their alleged roles in the violence, that political leaders had been arrested in connection with the riots, and that a Special Investigation Team had been instituted to look into the cases relating to the train burning and resulting communal riots.

More specifically, the Report states that the Supreme Court had followed the recommendations of a Central Review Committee and directed in 2004 that 134 persons charged under a different statute for the 2002 Gujarat train burning be charged under the Penal Code. It also recounted that in 2003 the Court had instituted a Special Investigation Team to reinvestigate the Gujarat train cases, and that within six months had arrested eleven people allegedly connected to the 2002 train burning and resulting communal riots. Significantly, among those arrested were local leaders of the BJP and VHP. The Country Report also notes that 41 police officers were being tried for their alleged roles in the violence, another fact relevant to Vahora's case to the extent he is suggesting that police officers present at the scene of his shooting are pertinent to his claim.

The Country Report further states that the Supreme Court was continuing its efforts to find those responsible

for the violence following the train burning and that the Court had asked Gujarat police to review the closure of numerous cases without investigation, though the police concluded that a majority could not be reinvestigated due to lack of witnesses. It also noted that the National Human Rights Commission and the National Commission for Minorities, two government entities, had intervened in several high-profile cases, including the 2002 anti-Muslim violence in Gujarat. Although many persons responsible for the 2002 violence still have not been brought to justice, the Country Report reflects that the Indian government has taken steps to punish offenders and that it neither condones the persecution Vahora fears nor is powerless to prevent it. And although we have cautioned about overreliance on State Department reports, this is not a case where the immigration court blindly relied on such reports while ignoring other evidence in the record. *Cf. Gomes v. Gonzales*, 473 F.3d 746, 756 (7th Cir. 2007).

The BIA was also not persuaded by the conversation Vahora claims he had with a police officer in his hospital room soon after the shooting. Vahora testified that while recovering in the hospital, an officer came to see him and advised him not to tell the truth about who had shot him and instead to say that he had been shot during a random police firing. Vahora contends that this officer's failure to protect him demonstrates that the Indian government was unable or unwilling to protect him. Other than this conversation with a local police officer, however, Vahora never attempted to obtain help from authorities in the four years between

the shooting incident and his departure from India, even after he relocated to different states in India and even though he said that the threats continued.

Although police apathy can indicate a government's unwillingness or inability to protect an applicant, the BIA reasonably determined that the single conversation with a non-supervisory police officer in the hospital did not mean that the government was unable or unwilling to protect Vahora. In contrast, for example, in *Guchshenkov v. Ashcroft*, 366 F.3d 554, 557-58 (7th Cir. 2004), a petitioner complained to police after he was beaten the night of his wedding by persons who told him he should not have married someone from a different nationality. When he went to the police, they responded with indifference. After he was beaten a third time and suffered a lacerated liver, he went to the police station seven times but did not receive help and was told a year later that his case had been lost from the archive and that the police were overloaded with other cases. *Id.* at 556.

We also found evidence that a government was unable to protect a petitioner in *Hor*, 421 F.3d at 502, a case the BIA noted in its decision in Vahora's case. The applicant in *Hor* sought help from the Algerian military but was told it could not protect him. He then sought help from the courts but received only a decision recommending that he be cautious and keep a low profile. We found that to be evidence that the government of Algeria was incapable of protecting the applicant. *See id.*; *see also Pramatarov v. Gonzales*, 454 F.3d 764, 766 (7th Cir.

2006) ("There is some evidence of governmental complicity, however, in the reaction of military officers to Pramatarov's complaints about being beaten and humiliated because of his ethnicity and in the refusal of the police to take action after he and his wife were beaten outside the restaurant.").

We certainly do not suggest that a person must seek and be denied assistance seven times to receive asylum. But Vahora had never sought and been refused police assistance nor had he ever made a report to the police or government authorities of what he now claims happened to him. *Cf. Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008) (denying petition where no evidence presented suggesting that police refused to respond to filed reports and noting fact that police did not prevent harm on one occasion does not compel a finding that they were unable or unwilling to prevent it). And the Country Report in the record suggests that the government is not unwilling or unable to take steps to address the persecution of which Vahora complains when it is notified.

Moreover, we agree with the government that Vahora's testimony undermines his claim that the Indian government was unable or unwilling to control his assailants. He testified that Patel and Mistry were pursuing him because they feared he would implicate them in the March 3, 2002 shooting, including to the Special Investigation Team set up by the government to investigate the violence after the train burning. Vahora also wrote in his written statement that they threatened to

harm him for revealing their connection to the shootings. But this motive for seeking to silence Vahora suggests that Patel and Mistry indeed feared facing consequences from the government for their crime. In other words, Vahora's assertion that Patel and Mistry were after him to avoid being implicated in the shooting belies his argument that the government of India was not willing or able to hold Patel and Mistry accountable or protect him from persecution. After reviewing the record, we conclude that substantial evidence supports the BIA's conclusion to deny Vahora asylum.

Vahora also sought withholding of removal. Because that standard is more stringent than the standard for asylum, an applicant who does not establish eligibility for asylum necessarily cannot meet the higher standard for withholding of removal. *Bueso-Avila v. Holder*, 663 F.3d 934, 939 (7th Cir. 2011). This request therefore fails as well.

Finally, Vahora challenges the BIA's denial of his motion to reopen, a decision we review for an abuse of discretion. *See Moosa v. Holder*, 644 F.3d 380, 384 (7th Cir. 2011). A motion to reopen proceedings will not be granted unless the "evidence sought to be offered is material and was not available and would not have been discovered or presented at the previous proceeding." 8 C.F.R. § 1229a(c)(7)(C)(ii); *see* 8 C.F.R. § 1003.2(c)(1); *Moosa*, 644 F.3d at 384. Here, the only new evidence Vahora offered was a Wikipedia article on Gujarat and a copy of the State Department's 2004 International Religious Freedom Report. The 2004 report was not new

evidence, as the 2008 International Religious Freedom Report was already in the record. And the Wikipedia article was undated, so Vahora failed to show it contained new information. The BIA did not abuse its discretion when it denied the motion to reopen.

### III.  CONCLUSION

The petition for review is DENIED.