In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3516

JOSE EDIN PINEDA-TERUEL,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A209-451-083

ARGUED SEPTEMBER 24, 2021 — DECIDED OCTOBER 27, 2021

Before EASTERBROOK, ROVNER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Jose Edin Pineda-Teruel illegally entered the United States in 2007. He was removed to Honduras in 2017. In 2019, he again attempted to enter the United States but was apprehended at the border. Facing enforcement of the prior removal order, Pineda-Teruel filed an application seeking withholding of removal under the Immigration and Nationality Act and protection under the Convention Against

Torture, claiming that he was the target of an extortion scheme in Honduras and risked death if he returned. Both an immigration judge and the Board of Immigration Appeals found that Pineda-Teruel failed to establish eligibility for withholding of removal under the Immigration and Nationality Act or protection under the Convention Against Torture. We find no error and therefore deny Pineda-Teruel's application.

I

Pineda-Teruel is a citizen and native of Honduras, where he owns a coffee farm. He first entered the United States in 2007 and was removed to Honduras ten years later, on June 14, 2017, pursuant to an order of removal. He subsequently reentered the United States in May 2019 and was apprehended at the border. Pineda-Teruel applied for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16–1208.18.

On November 27, 2019, Pineda-Teruel appeared pro se before an immigration judge (IJ) for a hearing to determine the merits of his application. Pineda-Teruel testified that he began to experience problems in Honduras upon his return to the country in June 2017. He did not testify about any targeted threats in Honduras prior to his return from the United States.

Pineda-Teruel testified that in August 2017 three men affiliated with the mafia but acting as police officers (dressed in police uniforms and driving a police vehicle) robbed him and demanded future monthly payments because he had just returned from the United States. He testified that because of his stay in the United States the mafia believed that he had

money: "What they said was, you just came back to [sic] the United States, so you have a little bit of money. So, you have to give it to us or else we'll kill you. They think you have money." Admin R. 114–15. Prior to his testimony before the IJ, Pineda-Teruel told an Immigration and Naturalization Service Asylum Officer the same thing: "They do this with everyone that comes from the US they think we have money that's why they're doing it because they think I have money because I came from the [U]nited [S]tates." Admin R. 170. Pineda-Teruel did not attribute the mafia's demands to his ownership of a coffee farm in any way.

Pineda-Teruel further testified that after August 2017 the mafia contacted him four to five times seeking unpaid extortion fees and later came to his coffee farm looking for him. Pineda-Teruel was not at the farm, but the mafia killed his two cousins who were working at the farm. According to Pineda-Teruel, he is positive that his cousins' killers now reside in the United States.[1]

Sometime later, Pineda-Teruel moved to an apartment a few hours away from his farm. He was afraid to go outside the apartment, fearing that the mafia would somehow find him. He lived there until he saw two unknown, armed men looking for him outside the apartment complex in April 2019. Though he experienced no harm or interaction with these individuals, Pineda-Teruel said that, at that point, he feared for his life and decided to reenter the United States.

---

[1] Pineda-Teruel testified, "They're here in the United States." The IJ asked, "How do you know that?" to which Pineda-Teruel responded, "Because I investigated and I'm 100% sure that they're here. You can jail me if you think that I'm lying but I'm 100 percent sure." Admin R. 111.

The IJ denied Pineda-Teruel's application. With respect to withholding of removal under the INA, the IJ found that Pineda-Teruel failed to establish past persecution and failed to establish likelihood of future persecution if he were to relocate within Honduras. The IJ also found that there was no nexus between Pineda-Teruel's fear of harm—which was due to the mafia's belief that he had money from his time in the United States—and any claimed status as a member of a statutorily protected social group, a required element for a successful withholding of removal claim under the INA. On the CAT claim, the IJ found that Pineda-Teruel's fears were too speculative to constitute a substantial risk of torture. Additionally, the IJ found that Pineda-Teruel had not shown that he could not reasonably relocate in Honduras to avoid future harm.

Pineda-Teruel appealed to the Board of Immigration Appeals (BIA), now represented by counsel, arguing that his status as a landowner could provide the required nexus between his fear of harm and a statutorily protected ground. The BIA dismissed Pineda-Teruel's appeal, concluding that his landowner nexus argument was waived since it had not been made before the IJ, and agreed with the IJ that Pineda-Teruel otherwise failed to establish fear of harm on account of a statutorily protected ground, so he was ineligible for withholding of removal under the INA. The BIA also agreed with the IJ that Pineda-Teruel's past experiences in Honduras did not rise to the level of past persecution or torture, and that he had not established a clear probability of torture in the future given that he had successfully relocated within Honduras.

Pineda-Teruel timely filed this petition for review.

II

Pineda-Teruel asserts that the IJ erred by failing to develop the record regarding his status as a landowner, which he argues will make him eligible for withholding of removal under the INA. He also asserts that the agency overlooked key evidence in finding that his experiences did not rise to the level of torture or constitute a substantial risk of future torture, and that with this evidence, he has established that it is more likely than not that he will be tortured if he is returned to Honduras. We address each argument in turn, reviewing the IJ's decision as supplemented by the BIA. *Kaharudin v. Gonzales*, 500 F.3d 619, 622 (7th Cir. 2007) (where the BIA "adopts the decision of the IJ and supplements that decision with its own reasoning, our review is of the IJ's decision as supplemented").

A

To be eligible for withholding of removal under the INA, an applicant must establish that he has suffered past persecution or that there is a clear probability of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Tsegmed v. Sessions*, 859 F.3d 480, 484 (7th Cir. 2017) (citing 8 U.S.C. § 1231(b)(3)(A)); 8 C.F.R. § 1208.16(b). According to Pineda-Teruel, being a landowner establishes his status as a member of a protected social group and thus provides the nexus required between a statutorily protected ground and his alleged past persecution and risk of future persecution. But, Pineda-Teruel asserts, articulating a social group claim is a "nuanced and complicated legal art" which is difficult for pro se litigants to navigate on their own. Petitioner-Appellant's Br. at 33. Therefore, Pineda-Teruel says, the IJ had a duty to develop the record on his status as a landowner in order to explore the

nexus necessary to support his withholding of removal claim.[2]

To correct this alleged error, Pineda-Teruel asks us to remand so he can develop the record on his status as a landowner. In doing so, he argues for a new rule in this circuit that would broaden the duty on immigration judges in the case of pro se applicants. The Fourth Circuit has recognized such a rule, requiring IJs to develop the record on the complex elements of a legal claim that the applicant asserts but fails to adequately articulate, including "a broad and robust duty to help *pro se* asylum seekers articulate their particular social groups." *Quintero v. Garland*, 998 F.3d 612, 633 (4th Cir. 2021) (reasoning that "immigration judges have a duty to explore for, probe into, and elicit all facts relevant to the applicant's claim and potential social groups").

But we need not make any new rules here, because Pineda-Teruel never even suggested that his harm (or risk of harm) was related to his ownership of a coffee farm. Rather, Pineda-Teruel repeatedly gave an entirely different reason for his being targeted by the mafia: because he had just returned from the United States, and so the mafia believed that he had

---

[2] Pineda-Teruel does not address whether this argument was waived before the BIA, but neither does the government. Ordinarily, we do not consider an argument on appeal that the BIA "properly declined to review [] as it had never been presented to the IJ." *Duarte-Salagosa v. Holder*, 775 F.3d 841, 845 (7th Cir. 2014) (declining to review a social group argument for a withholding of removal claim that the applicant presented only for the first time on appeal to the BIA). But a waiver argument can be waived on appeal. See *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1225 (7th Cir. 1991); see also *Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 107 (2d Cir. 2007) (the exhaustion of administrative remedies requirement in 8 U.S.C. § 1252(d)(1) is not jurisdictional and thus is waivable).

money. At no point did Pineda-Teruel suggest, nor did the decisions below rely on any assumption, that the belief that he had money was in relation to his status as a landowner. Therefore, adopting the Fourth Circuit's rule would not change the results in Pineda-Teruel's case. To our knowledge, no circuit has held that an IJ has a duty to concoct legal theories and develop a record on those theories on behalf of the applicant, in contradiction of an applicant's own legal theory. Such a rule would be required here to divert Pineda-Teruel's asserted legal theory into one that could then be saved by the Fourth Circuit's rule.

We agree with the decisions below that Pineda-Teruel failed to establish the required nexus between any past persecution or risk of future persecution and a statutorily protected ground.

B

Next, Pineda-Teruel asserts that the IJ erred when it denied his application for CAT protection because it overlooked the murder of his two cousins and ignored key evidence regarding his relocation within Honduras—that he lived in hiding and was eventually found by his persecutors. He argues that with this evidence, he has satisfied his burden under CAT.

Our case law recognizes that remand may be warranted when the agency overlooks key aspects of an applicant's claim "and might reach a different conclusion after fuller evaluation of the record." *Velasquez-Banegas v. Lynch*, 846 F.3d 258, 264 (7th Cir. 2017). But when the agency does not ignore or overlook key evidence, we review the agency's decision under the highly deferential substantial evidence standard and will

affirm unless the record compels a conclusion that the applicant has established that it is more likely than not that he or she will be tortured at the hands of or with the acquiescence of government officials if removed. See *Garcia-Arce v. Barr*, 946 F.3d 371, 376–78 (7th Cir. 2019); 8 C.F.R. § 1208.16(c)(2), (3). A speculative fear of future torture that rests on an unproven chain of hypotheticals does not satisfy the applicant's burden. See *Barry v. Barr*, 916 F.3d 666, 670–71 (7th Cir. 2019).

Here, the IJ did not overlook or ignore the evidence Pineda-Teruel highlights. Rather, the IJ considered the evidence and concluded that Pineda-Teruel had not met his burden. First, the IJ discussed in some detail Pineda-Teruel's claim that the mafia killed his cousin while pursing him.[3] Second, the IJ explicitly acknowledged Pineda-Teruel's claims that after he relocated, he lived in hiding and that individuals came to his apartment in 2019 looking for him. Therefore, we reject Pineda-Teruel's invitation to remand the case for the IJ to consider evidence that it already considered.

Satisfied that the IJ considered the evidence Pineda-Teruel argues was overlooked, we turn to whether that evidence compels the conclusion that Pineda-Teruel will more likely than not be tortured if he is returned to Honduras. It does not. Although the murder of his cousin or cousins is tragic,

---

[3] Pineda-Teruel claims that the mafia killed two cousins, while the IJ's decision references only one cousin. This is because Pineda-Teruel testified repeatedly about his "cousin" (singular) who the mafia killed at his farm. Whether Pineda-Teruel claims that one or two cousins were killed does not change our analysis of whether the IJ overlooked the events Pineda-Teruel described or (as discussed below) whether this evidence compels a contrary result.

Pineda-Teruel offers only his own speculation that these murders occurred at the hands of or with the acquiescence of government officials. Pineda-Teruel testified that mafia members, whom he believed were affiliated with the Honduran police, committed the murders (and later followed him to his hiding spot). Taking the events to which he testified as true, he offered no evidence beyond his speculation that ties the police from his initial encounter (or any government officials) to the murders (or to the men that visited his apartment). His speculation that they are connected is not enough to compel the conclusion that he is more likely than not to be tortured with government acquiescence if he is removed to Honduras. Moreover, according to Pineda-Teruel, the killers are now in the United States. Pineda-Teruel cannot establish a substantial risk of torture in Honduras by armed men who are no longer there. While Pineda-Teruel insists that the two men who killed his cousins are part of a broader network of the mafia, many of whom are still in Honduras, Pineda-Teruel has failed to show more than a speculative fear of future torture based on the hypothetical that the mafia will send new killers after him (presumably believing that he still has money from his travels to the United States, which ended in 2017, or from his current stay in the United States) when he returns to Honduras. Finally, Pineda-Teruel relocated in Honduras without experiencing any harm. He claims that he was afraid to leave his apartment because of the mafia, who eventually caught up with him. But again, he did not provide any evidence beyond his speculation that the police officers who committed the initial theft (or any Honduran government official) were connected to the armed men who followed him to his hide-away apartment. And although Pineda-Teruel claims that armed men came to the apartment complex in which he was living,

he is also "100% sure" that the men that came to kill him at his farm (and instead killed his cousins) are living in the United States. Pineda-Teruel doesn't attempt to explain why he would be in more danger from his pursuers in Honduras than he would be in the United States. The agency's decision is supported by substantial evidence.

The petition is DENIED.