In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-2434

EDELYN SELENY NERIO PEREZ and A.M.G.N., a minor,

*Petitioners*,

*v.*

MERRICK B. GARLAND, Attorney General
of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
Nos. A209-439-310 & A209-439-311

_____

ARGUED AUGUST 1, 2023 — DECIDED OCTOBER 3, 2023

_____

Before WOOD, HAMILTON, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Edelyn Seleny Nerio Perez (Nerio) and her minor daughter, citizens of Guatemala, petition for review of the denial of their applications for asylum and withholding of removal. Nerio sought relief on the basis that she would be persecuted by her partner's nephew on account of her Mayan ancestry. Because substantial evidence supports the immigration judge's determination that Nerio failed to

establish that the Guatemalan government is unable or un-willing to protect her, we deny the petition.

I

In 2016, Nerio and her minor daughter sought admission to the United States in Hidalgo, Texas, without the required authorization, and the Department of Homeland Security initiated removal proceedings. Nerio and her daughter conceded removability. Nerio (and derivatively, her daughter) applied for asylum and withholding of removal based on her fear that her partner's nephew, Walter Ariel Garcia Barrera (Walter), would harm them if they returned.

At a hearing before an immigration judge, Nerio testified that she and her partner, Yuny Marlon Garcia y Garcia (Yuny), have been together for ten years. Around a year after they met, Nerio became pregnant. Nerio then moved in with Yuny's family and gave birth to her daughter. Yuny left Guatemala in 2009, but Nerio continued living with, and later near, Yuny's family.

Nerio explained that Yuny's nephew, Walter, discriminated against her based on her indigenous Mayan heritage, considering her as his "inferior" and refusing to treat her as a member of his family. Walter said she was "muddying" the "bloodline of the Garcia family." He often referred to her as "Indian" and "indigenous Indian" and called her "ugly" and "stupid." Initially, Walter sought to sabotage Nerio's relationship with Yuny and his family by making up stories about her having relationships with other men.

Nerio further testified that around 2015, Walter began trying to physically harm her. Twice that year, he tried to hit her with his motorcycle. In February 2016, he shot at her with a

rifle while she was outside her house and called her a "[s]tu-pid Indian." After this, Nerio moved in with her parents, a few miles away. Walter continued to harass Nerio by driving by her parents' house very slowly and taunting her. Additionally, Nerio's daughter once returned from a visit with Yuny's mother and told Nerio that Walter had shot at her. Walter and Nerio then had a confrontation outside his home.

After the confrontation, Walter filed—in Nerio's words—a false police report against her. Their attorneys negotiated a mutual agreement in which they agreed to leave each other alone. But Walter, on multiple occasions, followed Nerio when she went to school or into town. Once, Nerio thought that Walter was going to shoot her because he pulled a gun, but he drove off because, according to Nerio, there was a police patrol car behind him.

In September 2016, in the aftermath of these incidents, Nerio sought and obtained a protective order against Walter. Nerio explained that she could have pressed for criminal charges against Walter, but she chose not to because his family would say, "[W]e're family—please stop all of this."

Three or four days after receiving the protective order, Nerio, still fearful of Walter, left her parents' house, eventually arriving in the United States. Word of the protective order infuriated Walter, who demanded that Nerio return and withdraw her underlying report.

In her testimony to the IJ, Nerio asserted that Walter would try again to kill her if she returned to Guatemala. Walter's family told her that he has instigated violence toward others—he attempted to kill another woman, for instance. And Nerio said that in the year before the 2019 immigration

hearing, Walter threatened her (through family) and warned her not to come back.

Nerio also testified about her fear that the Guatemalan government could not protect her. She said that "there's a lot of corruption" in Guatemala, that Walter told her he had money and powerful friends, and that law enforcement do not act "until there's death," and even then, "they hardly ever find the murderers." Further, she testified about Guatemala's history of violence against indigenous communities. Yuny also testified at the hearing that the Guatemalan authorities would not be able to protect Nerio because they "sell themselves out to whoever pays more."

The IJ denied Nerio's applications. The IJ found, first, that Nerio was credible, that she suffered harm rising to the level of persecution, and that the harm was on account of Nerio's Mayan ancestry. But the IJ concluded that Nerio did not establish past persecution because she failed to show that the Guatemalan government was "unable or unwilling" to protect her. (When the persecutor—like Walter—is a private actor, the applicant must show that the government is unable or unwilling to protect her from the persecuting party. See *Silais v. Sessions*, 855 F.3d 736, 742 (7th Cir. 2017).) The IJ pointed out that Nerio had not initially reported Walter to authorities after he shot at her, that she had reached an amicable settlement with Walter after he reported her to authorities, and that she obtained a protective order after she reported him to authorities. In a remark that Nerio spotlights in her appeal, the IJ concluded that Nerio failed to show that the Guatemalan government "either condones [the persecution] or is helpless to prevent it." (quoting *Vahora v. Holder*, 707 F.3d 904, 908 (7th Cir. 2013) (alteration in original)). For the same reason, the IJ

concluded that Nerio did not show a well-founded fear of future persecution and did not qualify for withholding of removal.

The Board of Immigration Appeals summarily affirmed the IJ's decision.

## II

On judicial review, Nerio argues that the IJ erroneously determined that she had not shown the Guatemalan government was unable or unwilling to protect her. Where, as here, the Board affirms the IJ's decision without opinion, we review the IJ's order. *Dai v. Garland*, 24 F.4th 628, 634 (7th Cir. 2022). Our review is deferential; we will uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation omitted). Because Nerio seeks protection from a private individual's actions, she must show that the Guatemalan government is unable or unwilling to control Walter in order to qualify for asylum or withholding of removal. *Osorio-Morales v. Garland*, 72 F.4th 738, 742 (7th Cir. 2023); *Almutairi v. Holder*, 722 F.3d 996, 1002–03 (7th Cir. 2013).

For the first time, Nerio now challenges the standard that the IJ applied to conclude that the Guatemalan government was unable or unwilling to protect her. She highlights the "condones" or "helpless" language that the IJ used to sum up his opinion and argues that this standard is more stringent than the "unable or unwilling" standard. See *Grace v. Barr*, 965 F.3d 883, 898–900 (D.C. Cir. 2020) (criticizing "condoned-or-completely-helpless standard" in *Matter of A-B-I*, 27 I. & N. Dec. 316 (A.G. 2018), as more stringent as well as arbitrary and capricious).

But we cannot reach this argument because, as Nerio concedes, she did not raise it in her appeal to the Board. See 8 U.S.C. § 1252(d)(1); *Chavarria-Reyes v. Lynch*, 845 F.3d 275, 279 (7th Cir. 2016). To the extent Nerio thinks she should be excused from having to raise the argument to the Board (because the Board affirmed the IJ's decision without opinion), she is mistaken. In cases where the Board affirms a decision without opinion, we have concluded that a petitioner waives—on exhaustion grounds—an argument that she did not raise before the Board. See, e.g., *Kithongo v. Garland*, 33 F.4th 451, 458 (7th Cir. 2022); see also *Cante-Lopez v. Garland*, 50 F.4th 255, 258 (1st Cir. 2022) (collecting cases).

Regardless, we see nothing to suggest that the IJ applied the wrong standard. He referred once to "condone" or "helpless," but elsewhere, he repeatedly characterized Nerio's burden as having to show that Guatemalan authorities were "unable or unwilling" to protect her from Walter. True, our opinions at times have recited the language of "condone" or "helpless." See, e.g., *Vahora*, 707 F.3d at 908 (petitioner must show government "condones" or "is helpless to prevent" persecution by private actors); *Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005) (same); *Chatta v. Mukasey*, 523 F.3d 748, 753 (7th Cir. 2008) (petitioner did not show government "condoned the persecution or was completely helpless to protect him"). To the extent that this language suggests a heightened standard, we clarify—in keeping with our long line of cases on the matter—that a petitioner need show only that the government is "unable or unwilling" to control the persecutors. See *Osorio-Morales*, 72 F.4th at 742; *Almutairi*, 722 F.3d at 1002–03; *Balogun v. Ashcroft*, 374 F.3d 492, 499 n.8 (7th Cir. 2004); *Chitay-Pirir v. I.N.S.*, 169 F.3d 1079, 1081 (7th Cir. 1999); see also *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir.

2017) (en banc); *Matter of Pierre*, 15 I. & N. Dec. 461, 462 (BIA 1975).

Nerio next argues that, even if the IJ applied the correct standard, substantial evidence does not support his conclusion about the government's ability to protect her. The IJ, she asserts, made too much of her testimony about her hesitancy to report Walter and her flight shortly after she received the protective order. She insists that she did not rely on the government's help because she knew that doing so would be futile. In support, she points to Walter's refusal to comply with their settlement and to more general evidence discussing corruption in the Guatemalan government (including the police and judiciary), the failure of police to respond to domestic-violence calls, and inequities experienced by women and indigenous communities.

We take Nerio's assertions seriously, but the evidence does not "compel[] a different result." See *Osorio-Morales*, 72 F.4th at 742 (citation and emphasis removed). Nerio did not initially report Walter's misconduct to law enforcement, and we have found it "reasonable—even in cases of extreme violence—to expect asylum seekers to have sought help from the authorities." *Id.* at 743. And when Nerio eventually did report Walter, the government issued a protective order. Indeed, the IJ regarded the protective order as a significant legal penalty, given Walter's reportedly angry response to it. Additionally, the IJ reasonably weighed the generalized country-condition evidence against Nerio's more particularized testimony, see *Sibanda v. Holder*, 778 F.3d 676, 681 (7th Cir. 2015), which reflects that the government responded to her entreaties for help by taking steps to protect her.

Finally, Nerio contends that her circumstances resemble those in *Juan Antonio v. Barr*, 959 F.3d 778, 795 (6th Cir. 2020), which granted the petition of a Guatemalan woman of Mayan descent who introduced evidence that governmental officials were unable or unwilling to protect her. But unlike this case, the petitioner there presented evidence that her assailant violated a government-issued restraining order and was undeterred by a fine, and that the police twice failed to respond when she sought help from them. See *id.* at 794.

Because Nerio did not establish that the Guatemalan government was unable or unwilling to protect her, she does not qualify for asylum or withholding of removal. See *Ingmantoro v. Mukasey*, 550 F.3d 646, 652 (7th Cir. 2008). Thus, the petition for review is DENIED.