In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3035

TANIA LIZETH BORJAS CRUZ and
IAN JARED MIDENCE BORJAS,

*Petitioners*,

*v.*

MERRICK GARLAND, Attorney General
of the United States,

*Respondent.*

———————————

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A209-282-347 and No. A209-282-348.

———————————

ARGUED JANUARY 24, 2024 — DECIDED MARCH 21, 2024

———————————

Before WOOD, SCUDDER, and LEE, *Circuit Judges*.

WOOD, *Circuit Judge*. Tania Lizeth Borjas Cruz and her minor son, both Honduran citizens, challenge the denial of their application for asylum and withholding of removal. Borjas Cruz sought relief on the basis that she had been, and would continue to be, persecuted by extortionists in Honduras.

An immigration judge determined that Borjas Cruz was ineligible for asylum and withholding of removal on several grounds, and the Board of Immigration Appeals ("Board") saw no error in that decision. We see no reason to set aside the Board's ruling either as it applies to her or to her son. (Insofar as Borjas Cruz seeks asylum, her son's application is derivative. See 8 U.S.C. § 1158(b)(3)(A); he is not included in her application for withholding of removal.) Substantial evidence supports one of the Board's reasons: its determination that Borjas Cruz has not established that she was, or would be, persecuted on account of a protected status. That determination is dispositive, and so we deny the petition for review.

## I

In March 2016, Borjas Cruz was living in Tela, Honduras, with her then-nine-year-old son. She opened a business selling food and clothing out of her home, and she publicized her wares on social media. As far as we can tell, things briefly ran smoothly until one morning in April 2016, when a car driven by a man pulled up to Borjas Cruz's home. A woman got out of the car, demanded that Borjas Cruz pay 5,000 lempiras[1] at a specified time and place, and promised that Borjas Cruz could continue to work undisturbed if she complied. Borjas Cruz did not recognize the man or the woman, but she had heard horror stories of the fates of those who had refused to comply with similar extortion demands, and so she paid as directed.

---

[1] For context, we note that one Honduran lempira equaled a little more than US $0.04 in 2016. The demand was thus for a bit more than US $200.

The same woman returned to Borjas Cruz's home in July 2016, again in a car driven by an unidentified man. This time the woman was more aggressive: she ordered Borjas Cruz to pay 16,000 lempiras no later than that afternoon, warned that she would return if Borjas Cruz contacted the police, and threatened to "clean the house" if Borjas Cruz failed to comply. Borjas Cruz understood this phrase to mean that gang members would come to her home, kill her and everyone in it, and steal the belongings inside. Unable to afford the payment and terrified of the extortionists, Borjas Cruz and her son decided to flee their hometown. They took a three-to-four-hour bus ride to Puerto Cortés, Honduras, hoping to seek refuge with Borjas Cruz's aunt, who lives there. But her aunt allowed Borjas Cruz and her son to stay only for one week. During that brief sojourn, they were unharmed and unthreatened. At the end of the week, Borjas Cruz's aunt insisted that they leave, as she feared that extortionists might follow Borjas Cruz to Puerto Cortés and put her life in danger as well.

To escape the extortion and fear, the next move Borjas Cruz and her son made was to the United States, in August 2016. Neither one had the required documentation to enter lawfully. Shortly thereafter the Department of Homeland Security initiated removal proceedings. Borjas Cruz conceded her removability, but she sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

At her hearing before an immigration judge, Borjas Cruz described her encounters with the extortionists. She testified that she believed that there was no place in Honduras where she and her son could safely live. Although Borjas Cruz did not know whether her extortionists were affiliated with a

particular criminal group, she suspected that they were members of a gang that could track her whereabouts. Compounding this fear, Borjas Cruz had heard stories of business owners in Honduras who were targeted for extortion and had suffered dire consequences. These stories involved a particular male business owner who was killed by extortionists after he called the police, a male taxi driver and a male bodega owner who were routinely extorted by gang members, and several boys who closed their food service stand after repeated extortion incidents. Along with her testimony, Borjas Cruz submitted several U.S. State Department reports and news articles describing the pervasiveness of gang violence, extortion, and police corruption in Honduras.

The immigration judge found Borjas Cruz credible but deemed her ineligible for asylum, withholding of removal, and CAT protection. With respect to Borjas Cruz's asylum request, the judge first determined that the threats Borjas Cruz had received, "although serious," were not severe or imminent enough to qualify as past persecution. The judge also rejected her claim that she would be persecuted in the future, for three dispositive reasons, each of which (if correct) would independently support his decision.

The judge first addressed Borjas Cruz's asylum application. In order to be eligible for asylum, an applicant must show that she qualifies as a "refugee," a term defined by the statute as someone who is unable or unwilling to return to her country because of persecution based on one of five grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). Borjas Cruz argued that she was a member of three social groups: (1) Honduran female business owners who refused to cooperate with

gangs, (2) Honduran women living alone who oppose gang violence, and (3) women in Honduras. The judge found that none of these were cognizable under the Immigration and Nationality Act. He explained that Borjas Cruz's first two proposed social groups failed because they are primarily defined by the shared risk of being persecuted. The third group— "women in Honduras"—was too broad.

Moving on, the immigration judge also found that even if he gave Borjas Cruz the benefit of the doubt with respect to her proposed social groups, her application still had to be rejected because she had not established a causal link between her claim of persecution and her membership in any of those groups. The judge found that based on the evidence presented, Borjas Cruz was targeted not because of her sex, business ownership, or opposition to gangs, but rather because the extortionists believed that she had money that they could seize.

Finally, the judge ruled that Borjas Cruz had failed to establish that she could not avoid future harm by relocating within Honduras. As he saw it, Borjas Cruz and her son had safely relocated to Puerto Cortés (though he did not acknowledge how fleeting this relocation was, nor that it failed when the aunt evicted her), that no threats had been communicated to Borjas Cruz other than the two extortion incidents in 2016 (though she was no longer in Honduras after the second threat), and that no evidence indicated that Borjas Cruz's unidentified extortionists would have the motivation or resources to track her.

For the same reasons, the immigration judge denied Borjas Cruz's request for withholding of removal. As to her request for CAT protection, the judge found that Borjas Cruz had

neither shown past torture nor that anyone intends to harm her should she be returned to Honduras.

The Board affirmed the immigration judge's decision and dismissed the appeal. Borjas Cruz now petitions for review.

**II**

Before this court, Borjas Cruz has expressly waived any challenge to the Board's denial of her claim for CAT protection, and its determination that she did not experience past persecution. Those concessions helpfully narrow the issues in her petition to her requests for asylum and withholding of removal based on her fear of future persecution. Where, as here, the Board adopts the immigration judge's findings and adds its own analysis, we review the underlying decision as supplemented by the Board. *W.G.A. v. Sessions*, 900 F.3d 957, 962 (7th Cir. 2018). We consider legal conclusions *de novo* and factual findings for "substantial evidence." *Meraz-Saucedo v. Rosen*, 986 F.3d 676, 684 (7th Cir. 2021). "Under the substantial evidence standard, the agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)).

To be eligible for asylum, Borjas Cruz must demonstrate that she is "unable or unwilling to return" to Honduras "because of persecution or a well-founded fear of persecution on account of" one of the five statutory characteristics or affiliations we mentioned earlier. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i). Borjas Cruz claims only membership in particular social groups to support her asylum claim. To qualify for asylum on this basis, she must (1) identify a cognizable social group to which she belongs and (2) establish a nexus

between any past or feared future harm and her membership in that social group. *Escobar v. Holder*, 657 F.3d 537, 545 (7th Cir. 2011). Membership in the protected group must be "at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *Gonzalez Ruano v. Barr*, 922 F.3d 346, 352 (7th Cir. 2019). And because Borjas Cruz grounds her petition on a well-founded fear of future persecution committed by a non-government actor, she has the added burdens of showing a link between that private action and the Honduran government, as well as establishing that she cannot reasonably relocate within Honduras to avoid the feared harm. See 8 C.F.R. § 1208.13(b)(3)(i). Withholding of removal requires the same showings. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b)(3)(i).

Borjas Cruz devotes much of her attention to contesting the Board's determination that she did not identify a cognizable social group. The government, however, has opted not to raise any substantive arguments defending that decision. We see no reason to opine on the point in the face of the government's waiver. We thus assume for the sake of argument that one or more of Borjas Cruz's proposed social groups—"Honduran female business owners who refuse to cooperate with gangs," "Honduran women living alone who oppose gang violence," and "women in Honduras"—are cognizable, and we turn immediately to the question whether Borjas Cruz has established the nexus between her membership in any such group and her feared persecution.

A

With respect to the latter question, we are satisfied that substantial evidence supports the Board's determination that she has not established the requisite link. As the immigration

judge (and the Board) recognized, our decision in *Melnik v. Sessions* is on point. 891 F.3d 278, 287–88 (7th Cir. 2018). In *Melnik*, we affirmed the Board's finding of no nexus between the petitioners' proffered group of "small business owners" in Ukraine and the claimed persecution, where no evidence indicated that the extortionists who targeted them had "any particular animus toward small business owners[.]" *Id.* at 287. At bottom, the *Melnik* petitioners were "simply a convenient target of a criminal element looking for a source of income." *Id.* Yet we have held that "wealth, standing alone, is not … a cognizable social group." *Orellana-Arias v. Sessions*, 865 F.3d 476, 485 (7th Cir. 2017) (quoting *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 845 (7th Cir. 2016)). *Melnik*, then, makes a key point: in a case involving extortion, the petitioner must show that the persecutor had some motivation to target the social group at issue beyond the mere desire to obtain money.

Borjas Cruz has not made this showing. She has presented no evidence to suggest that the unidentified extortionists who threatened her had any particular interest in singling out female business owners, women who live alone, or women at all. To the contrary, it appears from the record before us that the extortionists targeted Borjas Cruz simply because they thought she had money, as the owner of a successful small business. Borjas Cruz testified before the immigration judge that the unidentified woman who extorted her said that "*everyone* with a business is charged" the same amount. (Emphasis added). Moreover, the stories she recounted that fueled her fear of being harmed in the future, horrific though they were, involved only male business owners who were targeted by gang members. Borjas Cruz's own testimony thus supports the Board's finding that her perceived wealth, not her sex, made her a target for extortion.

In response, Borjas Cruz contends that extortionists in Honduras target women because they know that women are less likely than men to report crimes or to receive effective protection. Yet her only support for this assertion comes from U.S. State Department reports finding that women in Honduras often do not report crimes because of fear, police corruption, and high impunity rates. This is the type of generalized evidence in a country report that we have said "is an 'insufficient basis for granting asylum[.]'" *Yuan Rong Chen v. Gonzales*, 457 F.3d 670, 675 (7th Cir. 2006) (quoting *Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004)). In the absence of any particularized evidence that Borjas Cruz herself would be more of a target upon return because she is a woman, her claim that she fears persecution based on her sex is too speculative to establish the requisite nexus.

B

We end with a few words on the other ground mentioned by the immigration judge—his finding that Borjas Cruz could reasonably relocate within Honduras to avoid future harm. See 8 C.F.R. §§ 1208.13(b)(3)(i), 1208.16(b)(3)(i). We are reluctant to endorse that conclusion, because we regard this issue as more complicated than the immigration judge made it out to be. As the immigration judge saw it, Borjas Cruz and her son had successfully fled their hometown when they lived with Borjas Cruz's aunt in Puerto Cortés for one week. The judge noted that no threats were communicated to Borjas Cruz during that time. In addition, because no evidence indicated that the unidentified woman who extorted Borjas Cruz has ties with any criminal organization, he thought that "it is impossible to know whether that woman would have the geographic reach necessary to threaten or harm" Borjas Cruz.

But the judge did not grapple with the fact that Borjas Cruz's aunt insisted that Borjas Cruz leave her home after one week, as she feared that continuing to harbor Borjas Cruz would put her own life at risk. We are reluctant to infer from such a short stay in Puerto Cortés—one that was ended for such a troubling reason—that Borjas Cruz could safely relocate to another part of Honduras.

But we need not decide whether substantial evidence nonetheless supports the immigration judge's finding that relocation within Honduras was possible. The Board did not specifically discuss this finding, though it purported to affirm the immigration judge's decision in its entirety. Nor do we need to address any of Borjas Cruz's remaining arguments. As we have explained, substantial evidence supports the Board's determination that Borjas Cruz has not established a nexus between the persecution she fears and her membership in a particular social group. That alone requires us to uphold the Board's decision that Borjas Cruz has not established eligibility for asylum or withholding of removal. *Orellana-Arias*, 865 F.3d at 484.

The petition for review is therefore DENIED.