In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 24-3281

DANIA YAMILE MARTINEZ-MARTINEZ and
EDUAR YARET RODRIGUEZ-MARTINEZ,

*Petitioners,*

*v.*

PAMELA BONDI, Attorney General
of the United States,

*Respondent.*

---

Petition for Review of Orders of
the Board of Immigration Appeals.
Nos. A209-235-532 & A209-235-533.

---

ARGUED MAY 21, 2025 — DECIDED AUGUST 14, 2025

---

Before LEE, KOLAR, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* In July 2016, Dania Yamile Martinez-Martinez and her son Eduar Yaret Rodriguez-Martinez fled Honduras for the United States. She feared becoming the next victim of Celio Rodriguez, the ousted leader of a land cooperative called La Confianza where she lived. Homeland Security later discovered that Martinez-Martinez

entered the country illegally and initiated removal proceedings in November 2016. Martinez-Martinez applied for asylum, withholding of removal, and protection under the Convention Against Torture, citing threats from Rodriguez and his associates.

An immigration judge denied relief, and the Board of Immigration Appeals affirmed, finding that Martinez-Martinez failed to show past persecution or a well-founded fear of future persecution. Martinez-Martinez now challenges the agency's future-persecution finding, arguing that the Honduran government cannot protect her and that internal relocation is unreasonable. Because substantial evidence supports the agency's decision, we deny the petition.

## I.

### A. Background

Born in 1979 in Tocoa, Honduras, Martinez-Martinez grew up in a land cooperative where her father farmed African oil palm. Around 1989, her father and other cooperative members were tricked into selling their land in an ill-advised deal. Stripped of their land and primary source of income, her family plunged into poverty. At fourteen years old, Martinez-Martinez left home to live with her boyfriend, with whom she would later have four children.

In 2007, drawing on her family's history of displacement, Martinez-Martinez joined the Unified Movement of Farmers of the Aguán (MUCA), a grassroots coalition of former cooperative members who believed the land sale had been illegal. MUCA demanded land reform and staged mass demonstrations that pressured the government to grant the group use of a vacant parcel, now known as La Confianza, in 2008.

Alongside other MUCA families, Martinez-Martinez relocated there with her children and mother. Together the families elected a board of directors, built homes, and cultivated African palm on the reclaimed land.

In the early years, operations at La Confianza went smoothly; the cooperative turned a profit and families earned steady wages from the land. Martinez-Martinez held no leadership role, but worked the fields and regularly attended community meetings. Things began to unravel in 2015 when the board—under president Celio Rodriguez—stopped sharing financial records and slashed family earnings. Around the same time, Rodriguez formed an armed group of men to guard the plantation. Several MUCA leaders were found dead under suspicious circumstances, often after questioning finances or challenging Rodriguez's authority. One member was killed while traveling outside the cooperative, a murder Martinez-Martinez attributes to Rodriguez, whom she accuses of silencing dissent over embezzlement and the killings of MUCA members.

The turmoil catalyzed a successful vote to remove Rodriguez as president of the board in 2015, though he continued to live on the plantation. Martinez-Martinez supported the leadership change and was vocal about her opposition to Rodriguez at board meetings, drawing the ire of Rodriguez and his posse. At one meeting, an armed associate of Rodriguez made a thinly veiled death threat toward her, warning her to keep quiet. Associates of Rodriguez would also post outside Martinez-Martinez's home to intimidate her, and on one occasion in April 2016, her daughter saw men lurking and peering through their home's windows.

Fearing for her life, Martinez-Martinez fled Honduras with her son Eduar in July 2016. After arriving in the United States, she learned that both Rodriguez's successor as board president and a former MUCA treasurer had been murdered. She believes they were targeted for trying to expose Rodriguez's embezzlement.

Today, several of Rodriguez's associates still live in La Confianza, though some have been arrested by local officials for crimes committed there. Rodriguez himself, however, remains at large and is wanted by Honduran authorities in connection with at least two murders. One of his most feared enforcers, Osvin Caballero, also fled La Confianza but was later arrested in Mexico, extradited to Honduras, and convicted for multiple murders.

Although Martinez-Martinez has not been contacted by Rodriguez or his associates since fleeing Honduras, and her mother, grandparents, and daughters remain in La Confianza without incident, she believes she remains a uniquely visible target. Unlike her family, she publicly opposed Rodriguez at board meetings and continues to speak out against him in these immigration proceedings, actions she fears may have reached him. Nearly a decade later, she remains convinced that returning to Honduras would expose her to retaliation.

## B. Immigration Proceedings

Shortly after arriving in the United States, Martinez-Martinez and her son were placed in removal proceedings by the Department of Homeland Security. She conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture. At her hearing before an immigration judge, Martinez-Martinez described

her experience at La Confianza and testified that nowhere in Honduras was safe for her or her son. She also submitted country reports from the U.S. State Department and Human Rights Watch, several news articles, and letters of support from acquaintances. These sources documented the widespread gang violence, extortion, and corruption that plague Honduras.

The immigration judge found Martinez-Martinez's testimony credible but denied her applications. The judge concluded that she did not suffer past persecution and failed to show a well-founded fear of future persecution if returned to Honduras. In assessing past persecution, the judge acknowledged that Martinez-Martinez was verbally threatened during a board meeting and that her daughter once saw Rodriguez's associates monitoring their home. But he deemed this evidence insufficient, emphasizing that Martinez-Martinez was never physically harmed in Honduras.

Turning to future persecution, the judge offered three independent reasons for rejecting her claim. First, he found that Martinez-Martinez did not show she would be targeted on account of a protected ground—race, religion, nationality, membership in a particular social group, or political opinion. Second, he found that, even if she were targeted, she failed to show that Honduran authorities were unwilling or unable to protect her. Third, the judge determined that Martinez-Martinez could reasonably relocate within Honduras if conditions in La Confianza proved intolerable.

Martinez-Martinez appealed to the Board of Immigration Appeals, which affirmed the immigration judge's decision with little additional reasoning. Although the Board did not adopt the judge's findings on her alleged protected status, it

found the other two grounds—government protection and internal relocation—sufficient to support the denial.

This petition for review followed. Before our court, Martinez-Martinez expressly waived challenging the agency's denial of CAT protection and its finding that she did not suffer past persecution. Her claims for asylum and withholding of removal therefore rest on two arguments: (1) that Honduran authorities are unable or unwilling to protect her from threats by Rodriguez, and (2) that she cannot reasonably relocate within Honduras. To prevail, she must succeed on both grounds.

## II.

We review the immigration judge's order as modified by the Board. *Meza v. Garland*, 5 F.4th 732, 735 (7th Cir. 2021). "We consider legal conclusions *de novo* and factual findings for 'substantial evidence.'" *Borjas Cruz v. Garland*, 96 F.4th 1000, 1004 (7th Cir. 2024) (citation omitted). Under the substantial evidence standard, we assess whether the Board's decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Guzman-Garcia v. Garland*, 996 F.3d 480, 484 (7th Cir. 2021) (citation omitted). This standard is deferential to the agency, and we will "reverse only if the evidence compels a contrary conclusion." *Id.* (citation omitted).

To qualify for asylum, an applicant must show she is "unable or unwilling to return" to her home country due to past persecution or a "well-founded fear" of future persecution on account of membership in a protected group. *Borjas Cruz*, 96 F.4th at 1004 (quoting 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i)). The Immigration and Nationality Act does not protect against

purely private persecution; the harm must come from the government itself or from private actors the government cannot or will not control. *Osorio-Morales v. Garland*, 72 F.4th 738, 742 (7th Cir. 2023). Additionally, the persecution must be linked to one of the protected grounds, which must be "at least one central reason" for the harm. *Shaikh v. Holder*, 702 F.3d 897, 901 (7th Cir. 2012) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). The asylum applicant bears the burden of establishing that she suffered past persecution or that she has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(a).

Statutory withholding of removal under 8 U.S.C. § 1231(b)(3)(A) involves the same protected grounds as asylum, but the standard is higher. *See Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010). To qualify for withholding of removal, the petitioner must establish that there is a "a substantial risk" that she will be persecuted if removed from the United States. *Velasquez-Banegas v. Lynch*, 846 F.3d 258, 262 (7th Cir. 2017) (citation omitted). Thus, failing to qualify for asylum means the petitioner also cannot succeed on a withholding of removal claim. *N.Y.C.C. v. Barr*, 930 F.3d 884, 890–91 (7th Cir. 2019).

With those standards in place, we now consider the merits of Martinez-Martinez's applications for asylum and withholding of removal. She argues that the agency erred in rejecting her claim of a well-founded fear of future persecution. The immigration judge relied on two independent grounds. First, he concluded that Honduran authorities could and would protect her from Rodriguez and his associates. Second, he determined that, even if not, Martinez-Martinez could safely relocate elsewhere in Honduras. We address each finding in

turn, ultimately concluding that either ground provides a basis to deny Martinez-Martinez's petition.

## A. Honduras's ability and willingness to protect

A government is not "unable or unwilling" to protect its citizens from persecution simply because its efforts are imperfect. *Osorio-Morales*, 72 F.4th at 742. What matters is whether the government makes a genuine attempt "to control the persecutors." *Perez v. Garland*, 83 F.4th 630, 633 (7th Cir. 2023) (citations omitted). Isolated failures do not prove systemic collapse. To establish that a government is truly unable or unwilling to protect, an applicant must show persistent or "systemic" inaction. *Osorio-Morales*, 72 F.4th at 743.

We find that the agency presented substantial evidence that Honduras is both willing and able to control the threat posed by Rodriguez. The immigration judge acknowledged that the country conditions evidence Martinez-Martinez submitted, which focused on events from 2013 and earlier, may show that the government's efforts were once flawed. But the judge gave greater weight to more recent materials, including a 2018 State Department report that stated regional violence was "far below its 2012 peak" and highlighted the government's concrete steps to hold offenders accountable. The judge also pointed to specific efforts at La Confianza, where authorities investigated crimes, secured convictions, and imprisoned one principal perpetrator, Osvin Caballero. And while Rodriguez remains a fugitive, the Honduran government is still pursuing him. Finally, the judge emphasized that Martinez-Martinez never reported the violence, making it difficult to assess how the police might have responded.

Martinez-Martinez offers no evidence that compels a contrary conclusion. She contends that she should not have been expected to seek police protection because the police would have been ineffective. But we have found it "reasonable— even in cases of extreme violence—to expect asylum seekers to have sought help from the authorities." *Perez*, 83 F.4th at 633 (quoting *Osorio-Morales*, 72 F.4th at 743). She also stresses that Rodriguez still remains at large, placing her at continued risk and showing that the Honduran authorities cannot protect her. She does not, however, point to any evidence that Rodriguez is actively seeking her out (or anyone in MUCA for that matter). In any event, a government's failure to apprehend every criminal does not, by itself, establish that it is unable or unwilling to prevent future harm. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008).

## B. Relocation within Honduras

Although we need not address Martinez-Martinez's relocation arguments, given our conclusion that Honduras is able and willing to protect her, we note that the agency's relocation finding is also supported by substantial evidence.

The relevant inquiry is whether she could avoid the feared harm by relocating within Honduras, and if so, whether it would be reasonable to expect her to do so. *Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008). The reasonableness determination depends on the "the totality of the circumstances," "including the size of the country of nationality ..., the geographic locus of the alleged persecution, the size, numerosity, and reach of the alleged persecutor, and the applicant's demonstrated ability to relocate to the United States in order to apply for asylum." *Mejia v. Bondi*, — F.4th —, No. 23-

1508, 2025 WL 1982306, at *6 (7th Cir. July 17, 2025) (quoting 8 C.F.R. § 1208.13(b)(3)).

Martinez-Martinez claims that nowhere in Honduras is safe while Rodriguez remains at large. The immigration judge found that belief unreasonable. Her claim relied on a single incident from over a decade ago, in which a MUCA member was harmed in a city outside La Confianza. But the judge found that that victim was targeted because he possessed sensitive information about Rodriguez's criminal activity. That is unlike Martinez-Martinez, who admitted she holds no similar insider information. The judge also noted that several of Martinez-Martinez's family members continue to live in La Confianza without incident, suggesting that she could as well. In short, her assertion that relocation would be unreasonable is speculative and unsupported by the record. *See Pineda-Teruel v. Garland*, 16 F.4th 1216, 1221 (7th Cir. 2021) ("A speculative fear of future torture that rests on an unproven chain of hypotheticals does not satisfy the applicant's burden."). As such, nothing in the record compels us to disturb the immigration judge's conclusion.

Accordingly, we DENY the petition for review.